MORGAN ET AL. *v.* UNITED STATES ET AL.

No. 581.   Argued March 10, 11, 1938.—Decided April 25, 1938.
Petition for rehearing denied May 31, 1938.

2

*Messrs. Frederick H. Wood* and *John B. Gage,* with whom *Mr. Thomas T. Cooke* was on the brief, for appellants.

4

8

10

*Solicitor General Jackson* and *Mr. Wendell Berge,* with whom *Ass't Solicitor General Bell,* and *Messrs. Hugh B. Cox, James C. Wilson, Edward J. Ennis,* and *G. N. Dagger* were on the brief, for the appellees.

12

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This case presents the question of the validity of an order of the Secretary of Agriculture fixing maximum rates to be charged by market agencies at the Kansas City Stock Yards. Packers and Stockyards Act, 1921, 42 Stat. 159; 7 U. S. C. 181–229. The District Court of three judges dismissed the bills of complaint in fifty suits (consolidated for hearing) challenging the validity of the rates, and the plaintiffs bring this direct appeal. 7 U. S. C. 217; 28 U. S. C. 47.

The case comes here for the second time. On the former appeal we met, at the threshold of the controversy, the contention that the plaintiffs had not been accorded the hearing which the statute made a prerequisite to a valid order. The District Court had struck from plaintiffs' bills the allegations that the Secretary had made the order

14

without having heard or read the evidence and without having heard or considered the arguments submitted, and that his sole information with respect to the proceeding was derived from consultation with employees in the Department of Agriculture. We held that it was error to strike these allegations, that the defendant should be required to answer them, and that the question whether plaintiffs had a proper hearing should be determined. *Morgan* v. *United States*, 298 U. S. 468.

After the remand, the bills were amended and interrogatories were directed to the Secretary which he answered. The court received the evidence which had been introduced at its previous hearing, together with additional testimony bearing upon the nature of the hearing accorded by the Secretary. This evidence embraced the testimony of the Secretary and of several of his assistants. The District Court rendered an opinion, with findings of fact and conclusions of law, holding that the hearing before the Secretary was adequate and, on the merits, that his order was lawful. On this appeal, plaintiffs again contend (1) that the Secretary's order was made without the hearing required by the statute and (2) that the order was arbitrary and unsupported by substantial evidence.

The first question goes to the very foundation of the action of administrative agencies entrusted by the Congress with broad control over activities which in their detail cannot be dealt with directly by the legislature. The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles, that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the

rudimentary requirements of fair play. These demand "a fair and open hearing,"—essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an "inexorable safeguard." *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 73; *Ohio Bell Telephone Co.* v. *Public Utilities Commission,* 301 U. S. 292, 304, 305; *Railroad Commission of California* v. *Pacific Gas & Electric Co.,* 302 U. S. 388, 393; *Morgan* v. *United States, supra.* And in equipping the Secretary of Agriculture with extraordinary powers under the Packers and Stockyards Act, the Congress explicitly recognized and emphasized this requirement by making his action depend upon a *"full hearing."* § 310.[1]

In the record now before us the controlling facts stand out clearly. The original administrative proceeding was begun on April 7, 1930, when the Secretary of Agriculture issued an order of inquiry and notice of hearing with re-.

---

[1] Section 310 of the Packers and Stockyards Act (42 Stat. 159, 166; 7 U. S. C. 211) provides:

"Sec. 310. Whenever after full hearing upon a complaint made as provided in section 309, or after full hearing under an order for investigation and hearing made by the Secretary on his own initiative, either in extension of any pending complaint or without any complaint whatever, the Secretary is of the opinion that any rate, charge, regulation, or practice of a stockyard owner or market agency, for or in connection with the furnishing of stockyard services, is or will be unjust, unreasonable, or discriminatory, the Secretary—

"(a) May determine and prescribe what will be the just and reasonable rate or charge, or rates or charges, to be thereafter observed in such case, or the maximum or minimum, or maximum and minimum, to be charged, and what regulation or practice is or will be just, reasonable, and nondiscriminatory to be thereafter followed; . . ."

spect to the reasonableness of the charges of appellants for stockyards services at Kansas City. The taking of evidence before an examiner of the Department was begun on December 3, 1930, and continued until February 10, 1931. The Government and appellants were represented by counsel and voluminous testimony and exhibits were introduced. In March, 1931, oral argument was had before the Acting Secretary of Agriculture and appellants submitted a brief. On May 18, 1932, the Secretary issued his findings and an order prescribing maximum rates. In view of changed economic conditions, the Secretary vacated that order and granted a rehearing. That was begun on October 6, 1932, and the taking of evidence was concluded on November 16, 1932. The evidence received at the first hearing was re-submitted and this was supplemented by additional testimony and exhibits. On March 24, 1933, oral argument was had before Rexford G. Tugwell as Acting Secretary.

It appears that there were about 10,000 pages of transcript of oral evidence and over 1,000 pages of statistical exhibits. The oral argument was general and sketchy. Appellants submitted the brief which they had presented after the first administrative hearing and a supplemental brief dealing with the evidence introduced upon the rehearing. No brief was at any time supplied by the Government. Apart from what was said on its behalf in the oral argument, the Government formulated no issues and furnished appellants no statement or summary of its contentions and no proposed findings. Appellants' request that the examiner prepare a tentative report, to be submitted as a basis for exceptions and argument, was refused.

Findings were prepared in the Bureau of Animal Industry, Department of Agriculture, whose representatives had conducted the proceedings for the Government, and were submitted to the Secretary, who signed them, with a few

changes in the rates, when his order was made on June 14, 1933. These findings, 180 in number, were elaborate. They dealt with the practices and facilities at the Kansas City livestock market, the character of appellants' business and services, their rates and the volume of their transactions, their gross revenues, their methods in getting and maintaining business, their joint activities, the economic changes since the year 1929, the principles which governed the determination of reasonable commission rates, the classification of cost items, the reasonable unit costs plus a reasonable amount of profits to be covered into reasonable commission rates, the reasonable amounts to be included for salesmanship, yarding salaries and expenses, office salaries and expenses, business getting and maintaining expenses, administrative and general expenses, insurance, interest on capital, and profits, together with summary and the establishment of the rate structure. Upon the basis of the reasonable costs as thus determined, the Secretary found that appellants' schedules of rates were unreasonable and unjustly discriminatory and fixed the maximum schedules of the just and reasonable rates thereafter to be charged.

No opportunity was afforded to appellants for the examination of the findings thus prepared in the Bureau of Animal Industry until they were served with the order. Appellants sought a rehearing by the Secretary but their application was denied on July 6, 1933, and these suits followed.

The part taken by the Secretary himself in the departmental proceedings is shown by his full and candid testimony. The evidence had been received before he took office. He did not hear the oral argument. The bulky record was placed upon his desk and he dipped into it from time to time to get its drift. He decided that probably the essence of the evidence was contained in appellants' briefs. These, together with the transcript of the

oral argument, he took home with him and read. He had several conferences with the Solicitor of the Department and with the officials in the Bureau of Animal Industry and discussed the proposed findings. He testified that he considered the evidence before signing the order. The substance of his action is stated in his answer to the question whether the order represented his independent conclusion, as follows:

"My answer to the question would be that that very definitely was my independent conclusion as based on the findings of the men in the Bureau of Animal Industry. I would say, I will try to put it as accurately as possible, that it represented my own independent reactions to the findings of the men in the Bureau of Animal Industry."

Save for certain rate alterations, he "accepted the findings."

In the light of this testimony there is no occasion to discuss the extent to which the Secretary examined the evidence, and we agree with the Government's contention that it was not the function of the court to probe the mental processes of the Secretary in reaching his conclusions if he gave the hearing which the law required. The Secretary read the summary presented by appellants' briefs and he conferred with his subordinates who had sifted and analyzed the evidence. We assume that the Secretary sufficiently understood its purport. But a "full hearing"— a fair and open hearing—requires more than that. The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government pro-

poses and to be heard upon its proposals before it issues its final command.

No such reasonable opportunity was accorded appellants. The administrative proceeding was initiated by a notice of inquiry into the reasonableness of appellants' rates. No specific complaint was formulated and, in a proceeding thus begun by the Secretary on his own initiative, none was required. Thus, in the absence of any definite complaint, and in a sweeping investigation, thousands of pages of testimony were taken by the examiner and numerous complicated exhibits were introduced bearing upon all phases of the broad subject of the conduct of the market agencies. In the absence of any report by the examiner or any findings proposed by the Government, and thus without any concrete statement of the Government's claims, the parties approached the oral argument.

Nor did the oral argument reveal these claims in any appropriate manner. The discussion by counsel for the Government was "very general," as he said, in order not to take up "too much time." It dealt with generalities both as to principles and procedure. Counsel for appellants then discussed the evidence from his standpoint. The Government's counsel closed briefly, with a few additional and general observations. The oral argument was of the sort which might serve as a preface to a discussion of definite points in a brief, but the Government did not submit a brief. And the appellants had no further information of the Government's concrete claims until they were served with the Secretary's order.

Congress, in requiring a "full hearing," had regard to judicial standards,—not in any technical sense but with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature. If in an equity cause, a special master

or the trial judge permitted the plaintiff's attorney to formulate the findings upon the evidence, conferred *ex parte* with the plaintiff's attorney regarding them, and then adopted his proposals without affording an opportunity to his opponent to know their contents and present objections, there would be no hesitation in setting aside the report or decree as having been made without a fair hearing. The requirements of fairness are not exhausted in the taking or consideration of evidence but extend to the concluding parts of the procedure as well as to the beginning and intermediate steps.

The answer that the proceeding before the Secretary was not of an adversary character, as it was not upon complaint, but was initiated as a general inquiry, is futile. It has regard to the mere form of the proceeding and ignores realities. In all substantial respects, the Government acting through the Bureau of Animal Industry of the Department was prosecuting the proceeding against the owners of the market agencies. The proceeding had all the essential elements of contested litigation, with the Government and its counsel on the one side and the appellants and their counsel on the other. It is idle to say that this was not a proceeding in reality against the appellants when the very existence of their agencies was put in jeopardy. Upon the rates for their services the owners depended for their livelihood, and the proceeding attacked them at a vital spot. This is well shown by the fact that, on the merits, appellants are here contending that under the Secretary's order many of these agencies, although not found to be inefficient or wasteful, will be left with deficits instead of reasonable compensation for their services and will be compelled to go out of business. And to this the Government responds that if as a result of the prescribed rates some agencies may be unable to

continue, because through existing competition there are too many, that fact will not invalidate the order. While we are not now dealing with the merits, the breadth of the Secretary's discretion under our rulings applicable to such a proceeding (*Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420; *Acker* v. *United States,* 298 U. S. 426) places in a strong light the necessity of maintaining the essentials of a full and fair hearing, with the right of the appellants to have a reasonable opportunity to know the claims advanced against them as shown by the findings proposed by the Bureau of Animal Industry.

Equally unavailing is the contention that the former Secretary of Agriculture had made an order in May, 1932, containing findings of fact and fixing a schedule of rates, of which appellants were apprised. Because of changes in economic conditions, the Secretary himself had set aside that order and directed a rehearing. This necessarily involved, as the Secretary found, a consideration "of changes both general and particular" which had "occurred since the year 1929" and brought up all the questions pertinent to the new situation to which the additional evidence upon the rehearing was directed. The former findings and order were no longer in effect and it is with the conduct of the later proceeding that we are concerned.

The Government adverts to an observation in our former opinion that, while it was good practice—which we approved—to have the examiner, receiving the evidence in such a case, prepare a report as a basis for exceptions and argument, we could not say that that particular type of procedure was essential to the validity of the proceeding. That is true, for, as we said, what the statute requires "relates to substance and not form." Conceivably, the Secretary, in a case the narrow limits of which made such a procedure practicable, might himself hear

the evidence and the contentions of both parties and make his findings upon the spot. Again, the evidence being in, the Secretary might receive the proposed findings of both parties, each being notified of the proposals of the other, hear argument thereon and make his own findings. But what would not be essential to the adequacy of the hearing if the Secretary himself makes the findings is not a criterion for a case in which the Secretary accepts and makes as his own the findings which have been prepared by the active prosecutors for the Government, after an *ex parte* discussion with them and without according any reasonable opportunity to the respondents in the proceeding to know the claims thus presented and to contest them. That is more than an irregularity in practice; it is a vital defect.

The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play.

As the hearing was fatally defective, the order of the Secretary was invalid. In this view, we express no opinion upon the merits. The decree of the District Court is

*Reversed.*

Mr. Justice Black dissents.

Mr. Justice Cardozo and Mr. Justice Reed took no part in the consideration and decision of this case.

A PETITION FOR REHEARING, FILED ON MAY 20, 1938, WAS DENIED ON MAY 31, 1938.

PER CURIAM.

The Solicitor General moves for a rehearing of this case upon two grounds:

*First.* The first ground is that the Court has reversed itself; that the present decision is "directly contrary to the law of the case" as established by the Court's decision on the former appeal, *Morgan* v. *United States,* 298 U. S. 468; and that "a procedural omission" previously held "to be of no significance" is now regarded as "fatally defective."

These assertions are unwarranted. Not only are the two decisions consistent, but the rule announced in our former opinion was applied and was decisive of the present appeal. And the Government is in no position to claim surprise. The question whether there had been a fair hearing in the present case, in the light of the situation disclosed by the Secretary's testimony and the other evidence, was fully argued at the bar. Appellants presented, both orally and in an elaborate brief, with copious references to the record, the contention which we sustained.

The first appeal was brought to this Court because the plaintiffs had been denied an opportunity to prove that the Secretary of Agriculture had failed, to give them the full hearing which the statute required. Their allegations to that effect had been struck out by the District Court. 8 F. Supp. 766. We held its ruling to be erroneous and that the question whether the plaintiffs had a proper hearing should be determined, saying:

"But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them."

The case was then tried by the District Court upon that issue. From the Secretary's frank disclosure it appeared that findings of fact necessary to sustain the order had not been made by him upon his own consideration of the evidence but as stated below. Because such action fails to satisfy the requirement of a full hearing stated in our first opinion and quoted above, we reversed the judgment of the District Court which sustained the order.

Testimony of the Secretary and his associates, disclosed what had actually occurred. It appeared that the oral argument before the Assistant Secretary had been general and sketchy; that, aside from the oral argument, which did not reveal the claims of the Government in any appropriate manner, the Government had submitted no brief and no statement of its contentions had been furnished; that in this situation, findings had been prepared in the Bureau of Animal Industry, Department of Agriculture, whose representatives had conducted the proceedings for the Government; that these findings, 180 in number, were elaborate, dealing with all phases of the practices and facilities at the Kansas City live-stock market, the services and methods of the plaintiffs, and the costs and profits which should be allowed them as reasonable. These findings, prepared not by the Secretary but by those who had prosecuted the case for the Government, were adopted by the Secretary with certain rate alterations. No opportunity was afforded to the plaintiffs for the examination of the findings thus prepared until they were served with the Secretary's order and their request for a rehearing was denied.

The statement made in the petition for rehearing that the present decision is contrary to the law of the case as declared in our first opinion is wholly unfounded. Our decision was not rested upon the absence of an examiner's report. So far from departing from our former opinion,

or from the statement that the mere matter of the presence or absence of an examiner's report was not itself determinative, we reiterated both that statement and the principle underlying it in our opinion on the present appeal. We said:

"Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command.

"No such reasonable opportunity was accorded appellants. . . .

"The Government adverts to an observation in our former opinion that, while it was good practice—which we approved—to have the examiner, receiving the evidence in such a case, prepare a report as a basis for exceptions and argument, we could not say that that particular type of procedure was essential to the validity of the proceeding. That is true, for, as we said, what the statute requires 'relates to substance and not form.' Conceivably the Secretary, in a case the narrow limits of which made such a procedure practicable, might himself hear the evidence and the contentions of both parties and make his findings upon the spot. Again, the evidence being in, the Secretary might receive the proposed findings of both parties, each being notified of the proposals of the other, hear argument thereon and make his own findings."

And, then, pointing out the distinction and the serious defect in the procedure in the instant case, we added:

"But what would not be essential to the adequacy of the hearing if the Secretary himself makes the findings is not a criterion for a case in which the Secretary accepts and makes as his own the findings which have been prepared by the active prosecutors for the Government, after

an *ex parte* discussion with them and without according any reasonable opportunity to the respondents in the proceeding to know the claims thus presented and to contest them. That is more than an irregularity in practice; it is a vital defect."

The distinction was again brought out in our recent decision in the case of *National Labor Relations Board v. Mackay Radio & Telegraph Co., post,* p. 333, where the mere absence of an examiner's report was found not to be controlling, as the record showed that in that case the contentions of the parties had been clearly defined and that there had been in the substantial sense a full and adequate hearing.

The effort to establish a case for rehearing, either because of an asserted inconsistency in our rulings or because of lack of opportunity for full argument, is futile.

*Second.* The second ground upon which a rehearing is sought is that there is impounded in the District Court a large sum representing charges paid in excess of the rates fixed by the Secretary. The Solicitor General raises questions both of substance and procedure as to the disposition of these moneys. These questions are appropriately for the District Court and they are not properly before us upon the present record. We have ruled that the order of the Secretary is invalid because the required hearing was not given. We remand the case to the District Court for further proceedings in conformity with our opinion. What further proceedings the Secretary may see fit to take in the light of our decision, or what determinations may be made by the District Court in relation to any such proceedings, are not matters which we should attempt to forecast or hypothetically to decide.

The petition for rehearing is denied.

MR. JUSTICE BLACK dissents.

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration of this petition.