SOUTHWESTERN NEWSPAPERS
CORPORATION, Appellant,

v.

Tom CURTIS, Appellee.

No. 8995.

Court of Civil Appeals of Texas,
Amarillo.

June 22, 1979.

Rehearing Denied July 18, 1979.

Gibson, Ochsner & Adkins, Joe Harlan, Amarillo, for appellant.

Tom A. Curtis, Dist. Atty., Amarillo, pro se.

REYNOLDS, Chief Justice.

May a district attorney be temporarily enjoined from requiring a newspaper publisher and its reporters to make appointments for access to official news sources available in the district attorney's office to, and without the requirement of appointments by, representatives of other news media? Answering the question in the affirmative, we reverse the trial court's judgment denying a temporary injunction on the record before us, and remand the cause with instructions.

Southwestern Newspapers Corporation, publisher of the Amarillo Daily News, Amarillo Globe-Times and Amarillo Sunday News-Globe, brought this action against Tom Curtis, the 47th Judicial District Attorney, seeking consecutive orders to temporarily restrain, temporarily enjoin and permanently enjoin the district attorney. The publisher sought to temporarily restrain and temporarily enjoin the district attorney from enforcing a rule denying the publisher and its reporters access to official news sources in the office of the district attorney without an appointment, which is not required of other news media personnel. On a final hearing, the publisher seeks, in addition to the enjoinment of the appointment requirement, an order "to accord to Plaintiff [Southwestern Newspapers Corporation] and its reporters and representatives all rights, privileges, and courtesies given to another member of the news media."

As the basis for relief, the publisher plead this sequence of events: its publication of a news report concerning, and two editorials

commenting on, a statement by a county commissioner that, contrary to what he favored, he voted for a proposed budget for the district attorney's office out of fear of lawsuits threatened by the district attorney; the publisher's refusal of retractions requested by the district attorney; and the district attorney's retaliatory imposition of discriminatory restrictions against the publisher by denying its reporters access to official news in his office by refusing to see them or answer their questions without an appointment, which is not required of other news media personnel. The district attorney responded with an exception to the publisher's petition on the ground that it failed to state a cause of action, a challenge to the standing of the publisher to sue, and a specific answer denying that the restrictions alleged by the publisher were occasioned by, or were in retaliation for, the publications of the news report and editorials.

The trial court refused the issuance of a temporary restraining order and set a hearing on the matter of the temporary injunction. Following the hearing, the court—gratuitously stating, as reasons for the judgment to be rendered, that all prerequisites for the granting of a temporary injunction, except that of irreparable injury, has been shown—denied a temporary injunction.[1] Written findings of fact or conclusions of law were neither requested nor filed.[2]

The publisher has appealed. The appeal, flowing from the premise that the district attorney's actions abridged freedoms guaranteed the publisher by the First Amendment[3] and protected by the Fourteenth Amendment,[4] entails several disputations, some of which reach constitutional dimensions.

 Commanding first attention is the district attorney's challenge to the standing of the publisher to sue. The district attorney cites, among other authority, *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), for the principle that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the general public. The principle applies, so the district attorney reasons, to deny the publisher standing to maintain this action in the same way the principle was applied to the factual situation in *City of Abilene v. Shackelford*, 572 S.W.2d 742 (Tex.Civ.App. —Eastland 1978), *writ granted*, Tex., 585 S.W.2d 665 (1979), to deny standing to news media to challenge, by injunctive and declaratory proceedings, a closed meeting by a governmental body. We do not agree. Our concept of the law is that neither the principle itself, nor its application to deny some news media standing to challenge a closed meeting from which all news media are denied access, answers the inquiry into standing if, in fact, unequal access to official news is accorded the publisher.

Evident from the record is the fact that, although the district attorney's office is not a repository for public records which are open to the public, the personnel of the office customarily are sources of official news provided to the news media. While public officials need not furnish information, other than public records, to any news agency, a public official may not constitutionally deny to one media access that is enjoyed by other media, because one media is entitled to the same right of access as any

---

1. The judgment denying a temporary injunction is an interlocutory order, *Spence v. Fenchler*, 107 Tex. 443, 180 S.W. 597, 600 (1915), which is appealable. Tex.Rev.Civ.Stat.Ann. art. 4662; Tex.R.Civ.P. 385.

2. In appeals from appealable interlocutory orders, the trial judge need not file findings of fact or conclusions of law, but it is permissible to do so. Tex.R.Civ.P. 385(e).

3. U.S.Const. amend. I, which, as material here, states: "Congress shall make no law . . . abridging the freedom of the press."

4. U.S.Const. amend. XIV, § 1, reading in part: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

other. *Quad-City Community News Service, Inc. v. Jebens*, 334 F.Supp. 8, 13–16 (S.D.Iowa 1971). Moreover and in the absence of some compelling government interest to the contrary, all representatives of news organizations must not only be given equal access, but within reasonable limits, access with equal convenience to official news sources. *Westinghouse Broadcasting Co., Inc. v. Dukakis*, 409 F.Supp. 895, 896 (D.C.Mass.1976). The district attorney has not interposed any plea of a compelling government interest presenting a procedural confrontation of a First Amendment right with a legitimate government interest. Thus, although a corporation, the publisher, being engaged in an activity claimed to be constitutionally protected from the infringement alleged, has standing to seek legal redress for the alleged abridgment of a constitutionally guaranteed right. *N. A. A. C. P. v. Button*, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405, 415 (1963). The legal redress may be by way of injunction. *Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966). *Accord, McCoy v. Providence Journal Co.*, 190 F.2d 760, 764 (1st Cir. 1951), affirming the permanent enjoinment of a public official from refusing one newspaper access to public records made available to a competing newspaper.

Next addressed are the diverse contentions of the parties concerning the matter of irreparable injury. The district attorney asserts that, because the publisher's own testimony shows no more than a possibility of future damage or loss, injunctive relief was correctly denied upon the publisher's failure to prove injury, harm or damage. Notwithstanding the testimony, the publisher submits that the court erroneously required an evidential showing of irreparable injury as a prerequisite to injunctive relief to protect First Amendment freedoms.

■ In the classical sense, the granting of a temporary injunction is not warranted in the absence of some evidence establishing probable injury if the temporary injunction is not granted. *Armendariz v. Mora*, 526 S.W.2d 542, 543 (Tex.1975). But the legal-ism has no efficacy if there is a deprivation of a First Amendment freedom, for any significant denigration of First Amendment rights inflicts irreparable injury, *Fernandes v. Limmer*, 465 F.Supp. 493, 498 (N.D.Tex. 1979), and constitutes irreparable harm. *Westinghouse Broadcasting Co., Inc. v. Dukakis, supra,* at 896; *Borreca v. Fasi*, 369 F.Supp. 906, 911 (D.Haw.1974). In brief, "any delay in the exercise of First Amendment rights constitutes an irreparable injury to those seeking such exercise." *A Quaker Action Group v. Hickel*, 137 U.S. App.D.C. 176, 181, 421 F.2d 1111, 1116 (1969).

Given an irreparable injury resulting from deprivation of First Amendment freedoms, we reach the publisher's contention that the court's misconception of the law deprived the publisher of relief. The publisher recites the trial court's oral statements, to-wit:

> Prerequisites for granting a temporary injunction are these: (a) A substantial likelihood that the Plaintiff will prevail on the merits. (b) Substantial threat that the Plaintiff will suffer irreparable injury if the injunction is not granted. (c) A determination that the threatened injury to the Plaintiff outweighs the threatened harm to the Defendant by the injunction. (d) A determination that granting the temporary injunction will not disserve the public interest.

> \* \* \* \* \* \*

> The Court is not concerned with A, C, or D of the prerequisites for granting the temporary injunction, because I think these have been shown, but the Court is concerned about B, which deals with irreparable injury, a definition of which say [*sic*], "An irreparable injury must be imminently threatened and may not be speculative or conjectural. Mere uncertainty or apprehension of injury is not sufficient as a matter of law," and for these reasons I am granting the district attorney's motion for a directed verdict.

Tacitly adopting the expressions favorable to its position, the publisher argues that the statements demonstrate the order denying

the injunction is based on an erroneous conception of the law relating to irreparable injury. The illation is that, with the court's oral concession that the publisher will prevail on its claim of denial of a First Amendment freedom, the law establishes irreparable injury, and the court's judgment should be reversed and judgment should be rendered.

▉ Logical though the argument seems, it does not accurately chart the course for appellate review. As noted, written findings of fact and conclusions of law were neither properly requested of nor filed by the trial court.[5] Oral pronouncements of the basis for the judgment to be rendered cannot be substituted for written findings of fact and conclusions of law provided for by the rules, *Gasperson v. Madill National Bank*, 455 S.W.2d 381, 387 (Tex. Civ.App.—Fort Worth 1970, writ ref'd n. r. e.); and, hence, oral statements made by the judge at the time judgment was rendered may not be considered. *Kinney v. Shugart*, 234 S.W.2d 451, 452 (Tex.Civ.App. —Eastland 1950, writ ref'd). This situation invokes the rule, however seemingly anomalous in its application here, that "[w]here findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1978). And this rule appertains regardless of whether or not the trial court gives the correct reason for the judgment entered. *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73, 84 (1939).

This state of the record leads to an inquiry into and a determination of the focal point of these proceedings. The publisher has pleaded that the district attorney imposed restrictions denying the publisher and its reporters access to the district attorney's office without an appointment. On appeal, the district attorney tenders "as a stipulation or admission" this statement: "[H]e [the district attorney] has enforced a rule conditioning (or restricting, if you will) the access of Appellant [Southwestern Newspapers Corporation] and its reporters to the offices of the District Attorney and his staff to occasions when said reporters have arranged an appointment time with the District Attorney or a designated member of his staff, identifying the subject matter about which the interview is sought." He represents that he enforced the rule after Bill Cox, one of the publisher's reporters, had first announced, in a conversation which began informally, that everything he heard thereafter would be considered "on the record" and subject to publication.

▉ Understandable and protectible is the district attorney's concern that "confidential" matters in the office—*i. e.*, identity of sex crimes victims, trial strategy and plans, which are given as examples—may be discovered without the exercise of some restrictions. The publisher judicially disclaims it is seeking access to confidential information. But aside from that and in any event, at the point of restriction of access by the requirement of an appointment, there undoubtedly is an inhibition of action. Still, the mere refusal of entry without an appointment does not, without more, violate a First Amendment right, because the right to publish does not carry with it the unrestrained right to gather information. *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 14 L.Ed.2d 179, 190, *reh. denied*, 382 U.S. 873, 86 S.Ct. 17, 15 L.Ed.2d 114 (1965).

However, the *Zemel* holding neither answers nor forecloses the inquiry, for the joinder on the issue of restriction-of-access-by-appointment-only is but a prelude to the publisher's claim of a constitutional right violated by the restriction. The publisher has further alleged, without special exception having been taken in this regard, that the restriction denies the publisher and its

---

5. If detailed findings of fact and conclusions of law underlying an appealable interlocutory order are desired, they should be requested under the provisions of Tex.R.Civ.P. 296 and 385(e).

*Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 553 (1953).

reporters access to news sources made available to other news media personnel without the restriction of appointments, thereby hampering the publisher's activities in gathering the news and in informing the public. As mentioned, the district attorney did not interpose a plea of any compelling government interest which would call for a balancing of First Amendment freedoms against legitimate government interests.[6] In this posture, the publisher's allegations express a violation of the command, previously stated, that all representatives of new organizations must not only be given equal access, but within reasonable limits, access with equal convenience to official news sources.

So, the determinative matter becomes whether the publisher has shown that the requirement of appointments imposed on it constitutes a denial of its right of equal access to official news sources. The parties dispute the evidential force of the record in this respect, and an examination of the record is necessary.

Reporter Bill Cox testified to a conversation he had with the district attorney. A portion of that conversation is recorded thusly:

A . . . He [the district attorney] said that the restrictions he imposed or would impose would apply specifically to the Globe News. That he in no manner intended to penalize the other news media or interfere with their ability to get information from his office, because of the Globe News.

* * * * * *

Q Did he say anything about whether or not the Globe News reporters would be welcome or unwelcome at the district attorney's office?

A He said they would not be welcome.

Q State whether or not he emphasized that these restrictions applied to the newspaper only.

A Yes, he did. He stressed that point.

Q State whether or not he made the statement that he was making it clear that he was not doing anything to penalize or make things difficult for any other news media.

A Yes.

* * * * * *

Q . . . [S]tate whether or not you had another telephone conversation with Mr. Curtis.

A Yes . . . and it was at that time he said he had decided the restrictions he had set as tentative would be definite and in effect immediately.

On the day following the conversation, Cox returned to the district attorney's office. When Cox asked to see the district attorney and an assistant district attorney, he was told he would need an appointment. Cox left when he was told, "Goodby."

James L. Whyte, general manager of the Amarillo Globe News Division of Southwestern Newspapers Corporation, testified that he saw a television interview of the district attorney relating to the restrictions placed on the publisher's reporters. When asked if he heard the district attorney state that the restrictions applied to the Globe News only and not other media, Whyte answered:

Yes, it was made clear in that interview that the restrictions applied only to the Globe News.

Whyte also testified that being under restrictions which do not apply to other media would handicap news gathering and the publisher could not present the same news coverage as competitors.

Whyte's cross-examination by the district attorney adduced the following:

Q Now do you know what the rights, privileges, and access to be that is accorded to the other media?

* * * * * *

6. We are not unmindful that, on appeal, the district attorney does state the publisher's "on the record" position could lead to a disregard of the confidentiality often implicit in information furnished by the district attorney's office and could seriously impede the work of the district attorney and his staff. However, these are unpleaded matters which are also undeveloped in the present state of the record.

A The opportunity to see you and members of your staff without making an appointment, which is essentially all we are asking.

Q How do you know that to be true?

A Because that was your statement made in public . . .

This evidence is undisputed. It shows that the requirement of appointment for access is imposed solely on the publisher and its reporters, and that the imposition not only is a denial of equal access, but is a denial of access with equal convenience to official news sources available to representatives of other news media without appointments. And although the trial court's comments are not to be considered as factual findings or legal conclusions, the testimony no doubt explains why the court stated that all requirements, except for proof of irreparable injury, has been shown.

 The order granting or denying a writ of temporary injunction will be reversed only on a showing of a clear abuse of the broad discretion granted the trial court in determining whether to issue the writ. In these proceedings, the only question before the trial court was the right of the publisher to a preservation of the status quo—*i. e.*, the peaceful noncontested status as it existed before the imposition of the appointment restriction—pending a final trial on the merits. To warrant the issuance of a writ of temporary injunction, the publisher was required to plead and show a probable right and a probable injury. *See Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 552–54 (1953).

 The publisher has plead ˙and shown by nonconflicting evidence the denial of a constitutionally guaranteed right which, as a matter of law, inflicts an irreparable injury. Upon the pleadings and proof, the publisher established its entitle-

ment to a preservation of the status quo pending a trial on the merits of the right to a permanent injunction. Accordingly and absent some other legal ground for the refusal of relief to the publisher, it was a clear abuse of discretion for the trial court to deny a writ of temporary injunction. *Cf. Henry v. Greenville Airport Commission,* 284 F.2d 631, 633 (4th Cir. 1960), holding that a court has no discretion to deny relief by a temporary injunction where a violation of a constitutional right is clearly established.

 A final ground advanced for refusing the publisher relief is the district attorney's vigorous protestation that no temporary injunction can be drafted under the pleadings and evidence which meets the specificity requirements of Tex.R.Civ.P. 683,[7] or which can be obeyed in good faith. We are cognizant, as the district attorney emphasizes, that significant and inherent differences exist in the news gathering and dissemination procedures of the various media receiving official news from the district attorney's office, and that it would be impossible to treat every media reporter with absolute equality. But the protest is unavailing for two reasons. First, courts cannot abdicate their constitutional responsibility to delineate and protect fundamental liberties, *Pell v. Procunier, supra,* 417 U.S. at 827, 94 S.Ct. 2800, and difficulty in forming and enforcing an injunction should not bar the issuance of an injunction which is necessary to protect constitutional rights. *Lankford v. Schmidt,* 240 F.Supp. 550, 551 (D.C.Md.1965), *rev'd and remanded on other grounds,* 364 F.2d 197 (4th Cir. 1966). Second, the relief sought and to be granted is not so broad, nor the articulation and obedience so difficult, as to give validity to the protest. The only relief pleaded for and merited by the evidence is simply the temporary enjoinment of the district attorney, until a final hearing is held, from requiring

---

7. Tex.R.Civ.P. 683 reads: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

the publisher and its reporters to make appointments for access to official news sources available in the district attorney's office to representatives of other news media without the requirement of appointments.

In summary, the law mandates that, absent some compelling government interest to the contrary, the publisher and its reporters are entitled to the same access and, within reasonable limits, access with equal convenience to the official news sources in the district attorney's office as are accorded to representatives of other news organizations. Such access has been denied to the publisher and its reporters by the district attorney's imposition of the requirement of appointments, which are not required of representatives of other news organizations. Under this record, the evidence does not support any legal theory upon which the trial court's judgment denying a writ of temporary injunction can be upheld and, consequently, the court abused its discretion by denying a writ of temporary injunction.

Nothing we have written should be taken as indicating an opinion on the unresolved matter of a permanent injunction. The merits of that matter are not presented for review in this proceeding and, of course, we may not assume that the evidence adduced in this proceeding will be the same as the evidence developed at the hearing for a permanent injunction. *See Brooks v. Expo Chemical Company*, 576 S.W.2d 369, 370 (Tex.1979).

The trial court's judgment denying a temporary injunction is reversed. The cause is remanded to the trial court with instructions to proceed with the issuance of the writ of temporary injunction, to be effective until a final hearing, in accordance with this opinion.

COUNTISS, J., not participating.