David MADDEN, et al., Appellants,

v.

TEXAS BOARD OF CHIROPRACTIC
EXAMINERS, Appellee.

No. 13790.

Court of Appeals of Texas,
Austin.

Dec. 21, 1983.

Rehearing Denied Jan. 11, 1984.

Gerald H. Beckman, Huertz, Beckman & Rodriguez, Corpus Christi, for appellants.

Mark White, Atty. Gen., Eva King Loutzenhiser, Asst. Atty. Gen., for appellee.

Before SHANNON, POWERS and BRADY, JJ.

POWERS, Justice.

David Madden and the Sherman College of Straight Chiropractic appeal a trial-court judgment that affirms a final order issued by the Texas State Board of Chiropractic Examiners. The order denies Madden permission to take a licensing examination administered by the Board. We will reverse the judgment below and order that the proceedings be remanded to the Board.

## THE REGULATORY STATUTE

The Board regulates the practice of "chiropractic" as that word is defined in § 1 of the statute. Tex.Rev.Civ.Stat.Ann. art. 4512b (Supp.1982). Under § 5a of the statute, only individuals licensed by the Board may lawfully practice chiropractic. Section 10 requires that the Board administer an examination to "[a]ll applicants ... not otherwise licensed ...," of which class Madden is a member. The applicant must, under § 10, "successfully pass" the examination before he may receive a license. To be admitted to the examination, the applicant must be a citizen of the United States and present to the Board "satisfactory evidence" showing: (a) he is over age eighteen and of good moral character; (b) he has completed sixty semester hours of college courses at an institution other than a chiropractic school; and (c) he is a graduate of a "bona fide reputable chiropractic" school having "entrance requirements and [a] course of instruction ... as high as those of the better class of chiropractic schools in the United States ...." A "reputable chiropractic school," it is said in § 10,

shall maintain a resident course of instruction equivalent to not less than four (4) terms of eight (8) months each, or a

resident course of not less than the number of semester hours required by The University of Texas for the granting of a Bachelor of Arts degree; shall give a course of instruction in the fundamental subjects named in Section 12 of [the] Act; and shall have the necessary teaching force and facilities for proper instruction in all of said subjects.

Section 10 of art. 4512b also provides that "[t]he Board is authorized to adopt and enforce rules of procedure not inconsistent with the statutory requirements" applicable to the licensing of new practitioners. Section 4(d) requires the Board to "adopt guidelines for educational preparation and acceptable practices for all aspects of the practice of chiropractic." Section 14a authorizes the Board to exclude from its examinations any person who fails to comply with art. 4512b, including the provisions of § 10 which relate to educational preparation.

Finally, § 14(f) provides that "[i]f the Board proposes to refuse a person's application for a license, ... the person is entitled to a hearing before the Board." While this provision is unenlightening for the reason that it does not specify the issues to be considered and determined in such "hearing," it does imply an adjudicatory hearing, invoking the provisions of the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat. Ann. art. 6252–13a (1982) relative to contested cases and their judicial review. *See* APTRA § 18(a).

## THE CONTROVERSY

The record reveals that Madden wrote the Board on September 10, 1979, stating that he would soon graduate from the Sherman College of Straight Chiropractic and that he wished to take the examination administered by the Board, for which he requested the necessary application form. The Board replied that he was not eligible to take the examination because the Board "does not recognize credits from Sherman College of Straight Chiropractic" as being sufficient to meet the "entrance requirements for taking the licensure examinations given by the Board." In a subsequent letter to Madden, the Board explained further that it "only accepts credits from those Chiropractic colleges which are accredited by the Counsel [sic] on Chiropractic Education" and that the Board had determined that Sherman College of Straight Chiropractic was not accredited by that body. It is undisputed that Sherman College of Straight Chiropractic is not accredited by "the accrediting Commission of the Council on Chiropractic Education ...." The Board's position in the matter was dictated by its rule adopted June 11, 1975, which reads as follows:

All applicants for licensure who have matriculated in a chiropractic college after October 1, 1975 must present evidence of having graduated from a chiropractic college having status [sic] with the accrediting commission of the Council on Chiropractic Education or the equivalent thereof.

Madden and Sherman College of Straight Chiropractic sued the Board in a district court of Travis County, seeking various forms of relief against the Board's decision refusing Madden admission to the examination. An agreed judgment was evidently rendered in the case, requiring the Board to abrogate its rule of June 11, 1975 and requiring, in addition, a hearing as to whether Madden's chiropractic education qualified under the more general standards of art. 4512b, § 10—specifically whether Sherman College of Straight Chiropractic was a "bona fide reputable chiropractic school" within the meaning of that section.

The Board conducted an evidentiary hearing in Austin, Texas, on September 26, 1981, following which the Board issued its final order dated November 7, 1981. The order sets forth thirty-five findings of fact and two conclusions of law. The Board's conclusions of law read as follows:

1. A chiropractic college must either show accreditation by an accrediting body viewed as reliable by the Board or show a valid reason why such accreditation cannot be obtained and otherwise give proof

of reputable status in order to be a bona fide and reputable school for the purposes of Section 10, Article 4512b, V.A.C.S. 2. Sherman College of Straight Chiropractic located in Spartanburg, South Carolina, is not a bona fide reputable school as that term is used in Section 10, Article 4512b, V.A.C.S., and defined by the Board, and therefore, it is

ORDERED that David Madden a Sherman College graduate, is not eligible to sit for the state board examination.

Madden and the College attacked the Board's final order by a motion for rehearing and an amended motion for rehearing filed in the agency. The latter was not acted upon and therefore overruled by operation of law. APTRA § 16(e).

Madden and the College sued in a Travis County district court for judicial review of the Board's final order, setting forth many contentions that the Board's decision violated various statutes applicable to the proceedings in the agency. These generally revolve around the contention that the Board was not permitted to use the examination provisions of art. 4512b as a means of implementing its philosophy that a particular branch or doctrine of chiropractic was superior to another—in this instance that the "mixer" doctrine of chiropractic was superior to that of "straight" chiropractic, the difference between the two doctrines being primarily a difference as to the proper scope allowed chiropractic practitioners in the matter of diagnosis.[1] The district court affirmed the Board's final order based upon that court's finding that the

order "is reasonably supported by substantial evidence and is in all respects valid, legal and proper." This appeal ensued.

## HOLDING AND DISCUSSION

In the amended motion for rehearing filed by Madden and the College in the Board proceedings, and in their suit for judicial review in district court, they contended, as they do here, that Madden was denied due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. We hold that Madden was denied due process of law owing to the manner in which it was determined that he was ineligible to take the examination administered by the Board.

The provisions of the Fourteenth Amendment apply to the exercise of state power through an administrative tribunal having jurisdiction over the rights or privileges of a licensed occupation. *Rector v. Texas Alcoholic Beverage Commission,* 599 S.W.2d 800 (Tex.1980); *Francisco v. Board of Dental Examiners,* 149 S.W.2d 619 (Tex. Civ.App.1941, writ ref'd).

The Board having abrogated its rule of June 11, 1975, Madden's hearing was ostensibly to be determined under the general standards of art. 4512b, § 10, including the broad issue of whether his college was a "bona fide reputable chiropractic" school having the minimum curriculum requirements specified in the section. At the conclusion of Madden's case, however, the Board first assigned meaning to the statutory term "bona fide reputable chiroprac-

---

1. Among allegations made by Madden and the College were their charges that the Board had unlawfully delegated to the accrediting commission of the Council on Chiropractic Education the Board's power to determine what schools were "bona fide reputable chiropractic schools" under art. 4512b, § 10; that the Board's abrogation of its previous rule was "cosmetic only" and that the Board continued unfairly and subjectively to apply its terms to Madden's case; that the Board's refusal to allow Madden to take the examination was arbitrary, capricious, unreasonable, and in deprivation of Madden's constitutional rights; and that the result of the Board's adoption of the "mixer" branch or doctrine of chiropractic effectu-

ates a systematic violation of the laws of the State of Texas governing the practice of chiropractic, for the permissible scope of diagnosis allowed chiropractic practitioners under those laws is that consistent with "straight" chiropractic and contrary to that of "mixer" chiropractic.

Madden and the College prayed for the following relief: that the final order of the Board be set aside; that the College be "recognized" as a "bona fide, reputable school of chiropractic"; that Madden be permitted to take the examination; that the Board be enjoined "from engaging in any dilatory tactics to delay the effect of the relief granted" in the court's final judgment; and, for general relief.

tic" school: the school must be accredited "by an accrediting body viewed as reliable by the Board"; or a valid reason must be shown "why such accreditation cannot be obtained," coupled with proof that the school "is otherwise ... of reputable status." That is the meaning we derive from the Board's first conclusion of law. It has not been suggested to us that the Board was unable for some reason to formulate the controlling definition *before* commencement of Madden's case so that the hearing which followed would have meaning.

■ The Board possesses both rulemaking and adjudicatory powers. Art. 4512b, §§ 4(a), 14(f). The Board was therefore arguably free in its informed discretion to announce and apply the new definition in an *ad hoc* adjudicative proceeding rather than by promulgation of a general rule through an exercise of its rule-making pow-

er. *SEC v. Chenery Corp.,* 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580–81, 91 L.Ed. 1995 (1947); *State Bd. of Ins. v. Deffebach,* 631 S.W.2d 794, 799 (Tex.Civ.App.1982, writ ref'd n.r.e.).[2] The Board's action in assigning the new meaning to the term "bona fide chiropractic" school nevertheless raised the question of fundamental fairness for that new meaning was applied for the first time to Madden in the decision in his contested case and as the sole basis for denying him entrance to the examination.[3]

■ Among the elements of procedural due process of law are *notice* and *hearing. City of Houston v. Fore,* 412 S.W.2d 35, 37 (Tex.1967). These elements have a well-understood meaning of their own. To be meaningful, "notice" and "hearing" require *previous* notice and a hearing *relative to* the issues of fact and law which will *control the result* to be reached by the administrative

---

2. The following quotation from *Chenery,* 332 U.S. at 202, 67 S.Ct. at 1580 briefly summarizes the applicable principles:

> Since the Commission, unlike a court, does have the ability to make new law prospectively through the exercise of its rule-making powers, it has less reason to rely upon ad hoc adjudication to formulate new standards of conduct within the framework of the [constitutive] Act. The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise.... Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. To insist upon one form of action to the exclusion of the other is to exalt form over necessity.
>
> \* \* \* \* \* \*
>
> Hence we refuse to say that the Commission ... was forbidden from utilizing this particular proceeding for announcing and applying a new standard of conduct.... That such action might have a retroactive effect was not necessarily fatal to its validity. Every case of first impression has a retroactive

effect, whether the new principle is announced by a court or by an administrative agency .... (citations omitted)

*See also* 1 F. Cooper, State Administrative Law, 177–85 (1965), discussing the circumstances when the agency's choice to proceed by *ad hoc* adjudication may constitute an "abuse of discretion" under statutes such as APTRA. The matter is not raised by Madden and the College in the present case; however, the foregoing principles should not be confused with an issue they do raise, and that is the issue of due process of law within a contested-case context once the choice is made by the agency to proceed on that basis.

3. We may in this instance evaluate the Board's final order solely upon the basis stated therein for its refusal to admit Madden to the examination—that his graduation from Sherman College of Straight Chiropractic did not satisfy the statutory requirement that he graduate from a "bona fide reputable chiropractic" school.

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*SEC v. Chenery Corp., supra,* 332 U.S. at 196, 67 S.Ct. at 1577.

tribunal. *Morgan v. United States,* 304 U.S. 1, 18–19, 58 S.Ct. 773, 776–77, 82 L.Ed. 1129 (1938) ("Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be *fairly advised* of *what* the Government proposes and to be heard *upon its proposals before it issues its final command.*" (emphasis added)); *Gonzales v. United States,* 348 U.S. 407, 413, 75 S.Ct. 409, 412, 99 L.Ed. 467 (1955) (In order that a selective service registrant may effectively present his case before the appeal board of the service, he "must be cognizant of all the facts before the Board as well as the overall position of the Department of Justice" in opposition to his claim, and apprising him of these matters after the decision, but before he is required to file a motion for rehearing, comes too late.) These elements of fundamental fairness were particularly undermined in Madden's case by the essentially subjective and undefined terms of the controlling definition ultimately settled upon by the Board in its final order: "an accrediting body *viewed as reliable by the Board*"; "a *valid* reason why such accreditation cannot be obtained"; "and *otherwise* give proof of *reputable* status." (emphasis added).

■ The emphasized words and phrases imply the greatest range of legal and factual possibilities and Madden was entitled, at minimum, to notice and an opportunity to direct evidence and argument at whatever narrower issues of reliability, validity, and reputability were encompassed within those words and phrases since they were to be the controlling issues of fact and law in his case. Similarly, he was entitled to test by cross-examination any contrary evidence and to make objections to its admissibility if that were dictated by the nature of the evidence and the context made by the controlling issues. "Opportunity must be afforded all parties to respond and present evidence and argument on all issues involved." APTRA § 13(d). This is more than a statutory requirement; it expresses the constitutional guaranty of fundamental fairness implicit in the concepts of "notice" and "hearing."

We reverse the final order of the Board and the judgment of the district court. The cause is remanded to the district court with instructions that it be remanded to the Board for proceedings not inconsistent with this opinion.