**PUBLIC UTILITY COMMISSION OF TEXAS, et al., Appellants,**

v.

**CITY OF AUSTIN, Appellee.**

No. 14671.

Court of Appeals of Texas, Austin.

April 16, 1986.

Jim Mattox, Atty. Gen., Stephen J. Davis, Asst. Atty. Gen., Austin, for Public Utility Commission of Texas, Peggy Rosson, Dennis Thomas, and Jo Campbell. ·

J. Alan Holman, Brown, Maroney, Rose, Barber & Dye, Austin, for Federation of Austin Industrial Ratepayers (FAIR) and Motorola, Inc.

Andrew Kever, C. Robert Heath, Bickerstaff, Heath & Smiley, Austin, for City of Austin.

Before SHANNON, C.J., and EARL W. SMITH and GAMMAGE, JJ.

SHANNON, Chief Justice.

Before the Public Utility Commission entered a final order in an electric rate proceeding, the City of Austin filed a declaratory judgment suit in the district court of Travis County. Ancillary to its declaratory judgment suit, the City sought a temporary injunction. After hearing, the district court temporarily enjoined the agency from applying certain rate-making standards to the City and from going forward with the proceeding until the agency established new standards. The agency and appellant ratepayers[1] have perfected an appeal from the order of temporary injunction. This Court will dissolve the temporary injunction.

In brief, the City of Austin owns its own electrical utility which serves customers within and without the City's corporate limits. Appellant ratepayers are located outside City boundaries, but receive City electrical service. Dissatisfied with a recent rate-increase, the appellants appealed the new rate to the Public Utility Commission. In general, the City disputes the authority of the Public Utility Commission to review rates charged nonresident ratepayers by a municipally-owned electric utility and, by its suit for declaratory relief, the City sought a judgment to that effect.

In the temporary injunction order, the district court concluded that the City was probably entitled to a declaratory judgment that the Public Utility Commission is applying unauthorized standards to the City and that the City is entitled to a declaration of the appropriate standards. The district court found, in addition, that the Commission would continue such unauthorized application if not restrained.

■ Appellants complain, among other things, that the temporary order must fail because the City did not prove irreparable harm. For a temporary injunction to issue

---

1. Federation of Austin Industrial Ratepayers and Motorola, Inc.

in a proceeding ancillary to judicial review of an agency order, it must appear that:
(1) there is a reasonable probability that the utility will succeed on final hearing;
(2) the loss in the interim will be irreparable; and (3) the customers can be adequately protected by bond.

*Southwestern Bell Telephone Company v. Public Utility Commission of Texas,* 571 S.W.2d 503, 506 (Tex.1978); *City of Houston v. Southwestern Bell Tel. Co.,* 263 S.W.2d 169 (Tex.Civ.App.1953, writ ref'd.); *Southwestern Bell Telephone Company v. Public Utility Commission of Texas,* 615 S.W.2d 947, 952 (Tex.Civ.App.1981), writ ref'd n.r.e. per curiam, 622 S.W.2d 82 (Tex. 1981). The same rule is applicable in a temporary injunction proceeding ancillary to a declaratory judgment suit.

Appellants suggest, in the beginning, that the temporary injunctive order fails to set forth with specificity the reasons for its issuance, as required by Tex.R.Civ.P.Ann. 683 (Supp.1986). More to the point, appellants complain that the order does not set out any finding that the City will suffer irreparable injury in the interim before trial on the merits.

■ Pursuant to Rule 683, the reason for the granting of a temporary injunction must be stated in the order. "It is not required that the trial court explain its reasons for believing that the applicant has shown a probable right to final relief, *but it is necessary to give the reasons why injury will be suffered if the interlocutory relief is not ordered.*" *State v. Cook United, Inc.,* 464 S.W.2d 105, 106 (Tex. 1971) (emphasis added). *See also Transport Co. of Texas v. Robertson Transports,* 261 S.W.2d 549 (Tex.1953).

A reading of the instant order reveals that it sets out no specific finding of harm to the City. Indeed, neither the word "harm" nor the word "injury" appears in the order. The City contends that the order found that "the application of statutorily unauthorized standards to Plaintiff results in a denial of due process ..." and that such a constitutional violation constitutes irreparable harm as a matter of law.

This Court doubts that such recitation satisfies the requirement of Rule 683 that the order specifically set forth a finding of injury.

We do not, however, ground the dissolution of the order upon lack of compliance with Rule 683, but instead upon the City's failure to demonstrate irreparable harm. The City's sole claim to irreparable harm stems from its contention that the Commission's handling of the ratepayers' appeal denied it due process. The City suggests that the agency's denial of due process constitutes irreparable harm as a matter of law. The City's "harm per se" argument depends upon several assumptions, the first being that it will prevail on the merits because Article VI of the Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat. Ann. art. 1446c (Supp.1986), is not applicable to municipally-owned utilities. We need not now decide this question and will assume, arguendo, that this assumption is correct.

■ The City's second assumption is that, in the absence of PURA Article VI standards, the Commission is forcing it to hearing without standards, in violation of the City's due process rights. This assumption depends upon the City's view of this Court's opinion in *Madden v. Texas Board of Chiropractic Examiners,* 663 S.W.2d 622 (Tex.App.1983, writ ref'd n.r.e.). *Madden* does not support the City's argument.

In *Madden,* this Court quoted the following language from *Morgan v. United States,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938):

Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals *before it issues its final command.* (663 S.W.2d at 627, Emphasis added).

In this appeal, the Public Utility Commission has not yet signed a final order. In fact, the hearing examiner has not yet

handed down a proposal for decision because the district court's temporary injunction halted the agency proceeding. *Madden* holds that due process is violated when an agency signs a final order based on standards of which the parties did not have notice and were not able to address.

Because the Commission has not yet handed down a final order applying newly-announced standards to the City, no denial of due process has occurred. The City suggests that because the evidence has been closed in the agency proceeding, and because the district court's injunction leaves the Commission no choice but to announce new standards, the City's due process rights will be violated by the Commission's final order. We observe that the Commission, if it does choose to adopt new standards in this proceeding, may reopen the evidence to allow the City to address those new standards. This procedure may avoid a violation of due process. *See Public Utility Commission v. Texland Elec. Co.,* 701 S.W.2d 261, 267–268n (Tex.App. 1985, writ ref'd n.r.e.). Until the Commission hands down a final order, the City is only speculating that it will be denied due process.

■ The City's "harm per se" argument depends on yet another assumption: that the denial of due process is irreparable harm as a matter of law. The City's contentions are grounded on *Iranian Muslim Org'n. v. City of San Antonio,* 615 S.W.2d 202 (Tex.1981); *Southwestern Newspapers Corp. v. Curtis,* 584 S.W.2d 362 (Tex.Civ. App.1979, no writ); and a number of federal opinions. In *Iranian Muslim, supra,* a group of Iranian students sought an injunction requiring the City of San Antonio to grant them parade permits to demonstrate against the presence of the former Shah at a nearby military base. The court of civil appeals affirmed the district court's judgment denying the injunction on the basis that no irreparable harm had been shown. The Supreme Court, quoting *Southwestern Newspapers, supra,* reversed the court of civil appeals' judgment because "any significant denigration of First Amendment rights inflicts irreparable injury ... and constitutes irreparable harm." 615 S.W.2d at 208.

*Iranian Muslim* and *Southwestern Newspapers* do not support the City's allegation that denial of due process is irreparable harm per se. Both *Iranian Muslim* and *Southwestern Newspapers* turn on denial of first amendment rights, which constitute a very different matter from the City's claimed loss of due process. The denial of the exercise of first amendment rights inflicts a real and tangible harm on the affected parties, whereas in this appeal the City has not suggested to this Court any tangible harm it will suffer beyond its theoretical loss of due process. Indeed, we observe that the challenged utility rates set by the City will remain in effect until this proceeding is finally resolved. Accordingly, the City could not contend, and has not contended, that it will suffer any financial loss in the absence of an injunction.

The City also points to a number of federal opinions dealing with irreparable harm from the denial of constitutional rights. Most of these opinions are concerned with either first amendment violations or the denial of equal protection in the context of racial discrimination. *See Henry v. Greenville Airport Commission,* 284 F.2d 631 (4th Cir.1960); *Greater Baltimore Board of Realtors v. Hughes,* 596 F.Supp. 906 (D.Md.1984); *Decker v. U.S. Dept. of Labor,* 473 F.Supp. 770 (E.D.Wisc.1979). These opinions involve constitutional claims similar to those in *Iranian Muslim* and *Southwestern Newspapers, supra,* and may be distinguished on the same basis.

The City refers this Court to two United States district court opinions which do, indeed, suggest that a denial of due process is irreparable harm as a matter of law. *Glenwal Development Corp. v. Schmidt,* 336 F.Supp. 1079 (D. Puerto Rico 1972); and *Electronic Data Systems v. Social Security Org'n. of the Gov't of Iran,* 508 F.Supp. 1350 (N.D.Tex.1981). The district court in *Glenwal* concluded that the failure of the Consumer Services Administration

of Puerto Rico to promulgate rules to be applied to Glenwal, as required by statute, violated the due process and equal protection guarantees of the constitution. The district court concluded that the threat of prosecution pursuant to the penal provisions of the statute established a threat of irreparable harm. The district court in *Electronic Data Systems* ("EDS"), *supra,* concluded that threatened seizure of assets by the Secretary of Treasury pursuant to an executive order would cause irreparable harm to EDS. The court observed that EDS alleged denial of due process, and that when the denial of a constitutional right is involved, no further showing of irreparable injury is necessary. The court relied upon Wright and Miller's *Federal Practice and Procedure* as authority for this proposition.

The City also refers this Court to Wright and Miller's treatise as follows: "When an alleged deprivation of a constitutional right is involved, ... no further showing of irreparable injury is necessary." This Court notes that the *full* quote from Wright and Miller is "[w]hen an alleged deprivation of a constitutional right is involved, *most courts hold that* no further showing of irreparable injury is necessary." 11 Wright and Miller, *Federal Practice and Procedure,* § 2948 at 440 (1973). Accordingly, the rule is not so firm or so sweeping as the City would have one believe.

The United States district court opinions in *Glenwal* and *Electronic Data Systems, supra,* are, of course, not binding on this Court nor do we find them persuasive. Both district court opinions have an alternative basis for finding irreparable harm, and do not rely on the due process finding for that determination. Both of the alternative bases hinge on findings of real, tangible harm (threatened prosecution in *Glenwal,* and threatened seizure of assets in *Electronic Data Systems.*) The City has not suggested any such tangible harm in this appeal.

The temporary injunction is dissolved.