### TEXAS STATE BOARD OF PHARMACY, Appellant,

v.

### Jack Wesner SEELY, R. PH., et al., Appellees.

#### No. 3–88–093–CV.

Court of Appeals of Texas, Austin.

Dec. 21, 1988.

Rehearing Denied Feb. 15, 1989.

Appeals for the 14th Supreme Judicial District, Pl #2".

Jim Mattox, Atty. Gen., Brooks Wm. Conover, III, Asst. Atty. Gen., Austin, for appellant.

Peter R. Meeker, C. Dean Davis, Davis & Davis, P.C., Austin, for appellees.

POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

After a contested-case hearing, the Texas State Board of Pharmacy revoked the pharmacist license held by Jack Wesner Seely and the pharmacy license held by his pharmacy, A Little Walnut Pharmacy, Inc. Seely and the pharmacy sued in district court for judicial review of the Board's orders of revocation.[1] Texas Pharmacy Act, Tex.Rev.Civ.Stat.Ann. art. 4542a–1, § 27 (Supp.1988); Administrative Proce-

---

1. In the Texas Pharmacy Act, the Legislature delegated to the Board a general power to regulate the practice of pharmacy in the State (§ 6) and many specific responsibilities in that endeavor (§ 17). Among the powers delegated to the Board are the power to license pharmacists and pharmacies (§§ 19–25, 29–31); to discipline them in various ways for a variety of acts and omissions (§§ 26, 26A, 28); to promulgate and enforce "rules for the proper administration and enforcement of" the Act (§ 16); and to conduct contested-case hearings where required under APTRA or the Board's own rules (§ 27).

dure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19 (Supp.1988). The district court reversed the Board's orders; and, in the same final judgment, purported also to declare the orders "null and void" and to enjoin permanently their enforcement. The Board appealed to this Court for the further judicial review authorized by APTRA § 20. We will affirm the judgment in part and reverse it in part, remanding the case to the district court for further remand to the Board.

### THE CONTROVERSY

Seely and the pharmacy dispense in Austin, Texas, the controlled substance "Preludin." They do so under prescriptions written by physicians.[2] Twelve other pharmacies in the city also fill prescriptions for Preludin. Seely and his pharmacy dispensed a large quantity of Preludin between August 12, 1985 and December 15,

1986; indeed, in that 16–month period, they filled prescriptions for 98.13% of all Preludin tablets dispensed in Austin and 24.17% of those dispensed in the State. These included two or more prescriptions filled for each of 199 individuals. Upon these facts, the Board moved to revoke the licenses held by Seely and the pharmacy.

In a notice served Seely and the pharmacy, the Board charged the following grounds upon which it contemplated revoking their licenses under the Texas Pharmacy Act:

> Sec. 26. (a) the board ... may in its discretion ... revoke a license ... if the board finds that the licensee has:
> (1) violated any provision of this Act or any of the rules of the board adopted under this Act;
> (2) engaged in unprofessional conduct as that term is defined by the rules of the board;
>
> \*      \*      \*      \*      \*      \*

**2.** In the Controlled Substances Act, Tex.Rev.Civ. Stat.Ann. art. 4476–15, § 2.01 *et seq.* (1976 & Supp.1988), the Legislature determined that numerous designated "substances," divided into five "schedules" or categories, should thenceforth be "controlled substances" and subject to the provisions of the Act. The various substances constitute "controlled substances," irrespective of any "official, common, usual, chemical, or trade name" they might bear. *Id.,* § 2.02. The substances listed under each of the five "schedules" are also listed under a corresponding "Penalty Group." *Id.,* § 4.02. Various criminal offenses are prescribed in the Act according to such "penalty groups." *Id.,* §§ 4.03–4.09. In § 2.09 of the Act, the Legislature delegated to the Commissioner of Health, with approval of the State Board of Health, the power to add substances to the various schedules, delete them, or "reschedule" them, under guidelines set out by the Legislature itself in §§ 2.09–2.16. Section 3.08 of the Act pertains to the dispensing of controlled substances pursuant to a physician's prescription. If a substance is listed in Schedule I, it may not be administered or dispensed, with or without a prescription, except under provisions of the Act not applicable in the present case. If the substance is listed in Schedules II, III, IV, or V, it may be dispensed by a pharmacist pursuant to a physician's prescription and under conditions set out in § 3.08 pertaining to the form of the prescription, refill of the prescription, and time limits within which the prescription may be filled originally and limits on the number of refills. "Preludin" is a trade name for the controlled substance "Phenmetrazine," listed in Schedule II of the Act. *See* § 2.04(d). Consequently, a

pharmacist *may* lawfully dispense the substance pursuant to a physician's prescription under the following provisions set out in § 3.08 of the Act:
(a) Except for emergencies, the prescription must be in writing and in a form prescribed by the Department of Public Safety. § 3.08(a).
(b) A prescription "may not be filled after the end of the second day following the day on which the prescription was issued" and the prescription may not be refilled. § 3.08(g).
(c) The substance may not be dispensed except "for a valid medical purpose and in the course of professional practice." § 3.08(h), *(l).*
The pharmacist must also comply with various reporting requirements under a "triplicate prescription program" established in § 3.09 of the Act.
Curiously, in § 3.08(j), the Act permits the pharmacist to dispense a substance listed in Schedules III, IV, and V only "upon the determination of such pharmacist that such prescription was issued for a valid medical purpose and in the course of professional practice," but no similar *independent* assessment, by the pharmacist, is required in the case of Schedule II substances such as Preludin. As mentioned in the text of the opinion, the Board has evidently promulgated an informal policy that extends the independent-assessment requirement even to Schedule II drugs such as Preludin. We express no opinion on the validity of the policy as being contrary to the ordinary statutory implication.

(9) violated any provision of the Controlled Substances Act or Dangerous Drug Act or rules relating to those Acts.

\*   \*   \*   \*   \*   \*

(13) been negligent in the practice of pharmacy.

\*   \*   \*   \*   \*   \*

The notice also informed Seely of the rule-based and statutory provisions, outside § 26 of the Texas Pharmacy Act, upon which revocation would be considered. The first was the Board's rule defining "unprofessional conduct" to include dispensing a prescription drug outside "the usual course of professional practice"; dispensing a controlled substance "in a manner not consistent with the public health or welfare"; and "[f]ailing to practice pharmacy in an acceptable manner consistent with the public health and welfare." 22 Tex.Admin.Code § 281.24(a) (1986). The next was a provision in the federal Dangerous Drug Act, 21 U.S.C.A. § 841(a)(1), making it unlawful for a person to dispense a controlled substance except as authorized in the statute, which required compliance with a federal regulation quoted in the notice—21 C.F.R. § 1306.06, authorizing pharmacists to dispense a controlled substance only under prescriptions filled "in the usual course of . . . professional practice. . . ."

Following a contested-case hearing, the Board revoked the licenses held by Seely and the pharmacy. The final order rendered in Seely's case does not differ in any material respect from that rendered in the case brought against the pharmacy; both rest essentially on the same factual and legal grounds. The Board found in the latter case that Seely was president and "pharmacist-in-charge" of A Little Walnut Pharmacy, Inc. While the provisions of an applicable federal statute and regulations differ somewhat in the case against the pharmacy, the differences do not require separate discussion. We will, therefore, discuss the appeal solely in terms of Seely's case.

Seely sued the Board in district court for judicial review of the order revoking his license, praying for reversal of the order and for temporary and permanent injunc-tions against its enforcement. The terms of APTRA that pertain to review under the "substantial evidence rule" governed the statutory cause of action. APTRA § 19(e).

Seely alleged the Board's final order was invalid on the following grounds: (1) the Board's conclusions of law 3, 4, 5, and 6 were not supported by findings of fact (5) through (204), as claimed in the order; (2) conclusions of law 3, 4, 5, and 6 incorporated a cryptic standard of conduct, and one not shown in the evidence, by which Seely's conduct was judged variously to be "unprofessional," "negligent," inconsistent "with the public health and welfare," and outside the "usual course of professional practice"; (3) the Board could not reasonably have reached its conclusions of law in the absence of any finding and any evidence that any particular prescription should not have been filled; (4) the Board actually decided Seely's case, *sub silentio*, on the Board's *ultra vires* policy determination that Preludin should not be dispensed at all by pharmacists, even though the applicable statutes and regulations permit it to be dispensed, under prescription, until another State agency determines otherwise; (5) the Board's notice to Seely, by which his case was initiated in the agency, was insufficient to satisfy the constitutional requirement of due process of law; (6) the Board was not legally constituted when it decided Seely's motion for rehearing; and (7) each of the foregoing required reversal of the Board's final order for one or more of the grounds enumerated in APTRA § 19(e)(1)–(6).

The district-court judgment does not indicate which of Seely's various allegations the court sustained in reversing the Board's final order. The judgment recites only that the court had reached

> an opinion that [Seely's] substantial rights . . . had been prejudiced because the [Board's] findings, inferences, conclusions, and decisions are in error as alleged. . . .

*See* APTRA § 19(e). It follows that we must sustain the district-court judgment if the Board's final order was correctly re-

versed on any of the grounds alleged by Seely.

### THE AGENCY ORDER

The Board's final order in Seely's case contains a total of 204 findings of underlying fact inferred by the Board from portions of the evidence that are essentially undisputed. Findings (1) through (4) are not material to the appeal. The remaining findings (5) through (204) pertain to the Preludin prescriptions filled by Seely between August 12, 1985 and December 15, 1986.

Findings (5) through (203) are the same in substance. Each names one of the 199 individuals for whom Seely filled more than one 30–tablet Preludin prescription in the period August 12, 1985 through December 15, 1986, each prescription being identified by number, date, and place of writing. Finding (204) declares simply that Seely dispensed, in the period, a total of 68,490 Preludin tablets. Together, the Board's findings of fact (5) through (204), aided by stipulation of the parties in one particular, establish that Seely filled prescriptions for Preludin, as follows, in the period August 12, 1985 through December 15, 1986:

| Number of Customers | Number of Prescriptions | Total Tablets |
|---|---|---|
| 1,625 | 1 | 48,750 |
| 70 | 2 | 4,200 |
| 45 | 3 | 4,050 |
| 50 | 4 | 6,000 |
| 25 | 5 | 3,750 |
| 7 | 6 | 1,260 |
| 1 | 7 | 210 |
| 0 | 8 | 0 |
| 1 | 9 | 270 |
| 1,824 | | 68,490 |

The evidence being undisputed, relative to the foregoing, the controversy reduces to a dispute about the legal consequences assigned by the Board to its findings of fact (5) through (204).

The Board's final order contains six "conclusions of law," or findings of ultimate fact, wherein the Board applied the relevant statutes and rules to the agency's findings of fact. Upon these conclusions of law, the Board presumably revoked Seely's license. The first two conclusions of law require no discussion; they refer to the notice given Seely of the hearing and of "the facts or conduct alleged to warrant disciplinary action against him."

Each of the last four conclusions of law determines adversely to Seely, in statutory language, one ground for revocation set out in § 26 of the Texas Pharmacy Act, as follows:

\*　　\*　　\*　　\*　　\*　　\*

3. Seely "engaged in unprofessional conduct," within the meaning of § 26(a)(2), "by dispensing Preludin tablets as set out in" the agency's findings of fact.

4. Seely violated the federal "Dangerous Drug Act or rules relating" thereto, within the meaning of § 26(a)(9)—specifically, the provisions of 21 U.S.C.A. § 841(a)(1) and 21 C.F.R. § 1306.06 which forbid a pharmacist to dispense Preludin except "in the usual course of his professional practice"; all as set out in the agency's findings of fact.

5. Seely had been "negligent in the practice of pharmacy," within the meaning of § 26(a)(13), "by dispensing Preludin" as set out in the agency's findings of fact.

6. Seely "violated" a provision of the Texas Pharmacy Act or a rule of the Board, within the meaning of § 26(a)(1), by reason of the conduct specified in 3, 4, and 5 above.

\*　　\*　　\*　　\*　　\*　　\*

Each of the four conclusions of law refers for support to all the Board's findings of fact (5) through (204), summarized above. These establish that between August 12, 1985 and December 15, 1986, Seely dispensed to 1,824 customers some 68,490 Preludin tablets under prescription, including 199 instances when he filled more than one prescription for the same person. But nothing *in the order* purports to determine that any such prescription was invalid or that Seely should not have filled it for any reason. *Nothing stated in the order purports to supply a theory or a ground upon which the Board converted Seely's*

*presumptively lawful conduct, in filling these valid prescriptions, into conduct condemned by the relevant statutory and rule-based provisions* as "unprofessional," "negligent," "not in the usual course of ... professional practice," and conduct "not consistent with the public health or welfare."

When the anomaly was pointed out to the Board's counsel in oral argument, he informed us, with welcome candor, that all four conclusions of law *actually rest on two grounds not stated in the final order itself.* They are, however, suggested *in the evidence* adduced in the contested-case proceeding in the agency; and this is sufficient to sustain the agency order, in the Board's view, as discussed below.

The *first* ground, upon which the Board actually rested its four conclusions of law, refers to the number of 30–tablet Preludin prescriptions a pharmacist may fill for the same individual. We were told that the Board had determined, from the evidence adduced in the case, that Preludin ceases to be therapeutic after the third such prescription for the same individual. Consequently, a pharmacist may not *in any circumstances* fill a *fourth* prescription for the same individual without contravening thereby the norms and standards of conduct described above and implied in § 26(a)(1), (2), (9), and (13) of the Texas Pharmacy Act or the statutory and rule-based provisions incorporated therein.

The *second* ground, upon which the Board actually rested its four conclusions of law, refers to the quantity of Preludin tablets Seely supplied, between August 12, 1985 and December 15, 1986, compared to other pharmacies in his city and in the State. The evidence showed that Seely supplied 98.13% of all Preludin tablets dispensed under prescription in Austin, and 24.17% of those dispensed in the State. An expert witness gave in evidence his opinion that these numbers were inconsistent with a therapeutic purpose for the drug and constituted, in consequence, unprofessional conduct on Seely's part. The Board agreed, we are told, with this expert opinion.

Having been so informed by counsel of the actual grounds upon which the Board reached its four conclusions of law, and its decision to revoke Seely's license, we turn then to the Board's contention that the agency's final order may validly rest on such external grounds, notwithstanding the Legislature's requirement that an agency decision be contained in a writing that includes the findings of fact and conclusions of law, separately stated, upon which the decision rests. APTRA § 16(a), (b).

### SUBSTANTIAL EVIDENCE

■ In its first point of error, the Board contends we must sustain its final order (and reverse the judgment below), independent of Seely's various allegations, because the agency "decision ... was reasonably supported by substantial evidence in the record as a whole," citing *Texas Health Facilities Commission v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). We believe *Charter Medical* determines the point of error, but it does so contrary to the Board's contention.

The Board devotes much of its argument to urging the familiar generalities: the agency decision is deemed "prima facie valid and subject to review under the substantial evidence rule," *Imperial American Resources Fund, Inc. v. Railroad Commission of Texas*, 557 S.W.2d 280, 284 (Tex. 1977); the substantial-evidence rule requires the reviewing court to decide "whether the evidence as a whole is such that reasonable minds could have reached a conclusion that the agency must have reached in order to justify its action," *Dotson v. Texas State Board of Medical Examiners*, 612 S.W.2d 921, 922 (Tex.1981); as a practical matter, "it has not taken much evidence ... to qualify as substantial. In fact, the evidence may be substantial and yet greatly preponderate the other way," *Lewis v. Metropolitan Savings and Loan Ass'n*, 550 S.W.2d 11, 13 (Tex.1977); and so forth. But these are *only* generalities. "General propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76, 25 S.Ct. 539, 547, 49 L.Ed. 937 (1905) (Holmes, J., dissenting).

From the foregoing generalities, the Board infers a theory of substantial-evidence review that operates as follows: (1) a reviewing court examines the mass of raw evidence, adduced in the agency proceeding, to ascertain whether any part of it would make revocation of Seely's license appear "reasonable" under *the court's* understanding of the meaning of the evidence, its understanding of agency regulations and other policy determinations, and its understanding of the relevant statutory provisions from which those regulations and policies descended; (2) if so, the reviewing court simply affirms the agency decision to revoke Seely's license because such evidence, standing alone, amounts to "substantial evidence."

Under the Board's theory of substantial-evidence review, we might indeed sustain the final order revoking Seely's license because that action might be viewed as "reasonable" under the evidence considered in the framework of the general propositions mentioned previously. We will summarize the evidence.

The following evidence was *not* disputed: Preludin, an appetite suppressant commonly prescribed for the treatment of obesity, is also commonly abused and can be dangerous to health if taken beyond a short-term period. (What constitutes a safe "short-term period" was disputed in the evidence, as discussed below). In the period August 12, 1985 through December 15, 1986, Seely distributed 68,490 Preludin tablets under prescriptions for 30 tablets each, as summarized above. The 68,490 tablets dispensed by Seely amounted to 98.66% of all Preludin tablets dispensed in Austin, Texas, by the 13 pharmacies that filled Preludin prescriptions in the period, and 24.17% of all Preludin tablets dispensed under prescription in the State of Texas, in the period. Each prescription filled by Seely was legally valid under the laws and regulations that govern physicians who prescribe Preludin for their patients. Nevertheless, recognizing the potential hazard posed by Preludin, when taken beyond a short-term period, Seely took the following precautions in the 199 instances where he filled more than one 30–day prescription for the same individual: (1) Seely telephoned the prescribing physician and talked to him personally to verify that he intended his patient to have an additional 30–day supply of Preludin, and that the physician was monitoring his patient's condition to assure that the Preludin was serving a therapeutic purpose and did not pose a danger in the patient's particular circumstances; and (2) Seely examined the patient visually, before filling the prescription, to verify that the patient was obese (demonstrating at least a *prima facie* purpose in taking the drug) and that he did not manifest any external signs of substance abuse such as slurred speech, pin-point pupils, or difficulty in walking.

No evidence suggested, and the Board did not find, that Seely's precautions were inadequate, on any occasion, under his professional duty to make an independent judgment about whether any particular supply of Preludin would be therapeutic for the patient. No evidence suggested that Seely violated any rule or statute by filling any particular Preludin prescription, or that he should not have filled any particular prescription for any other reason.

The only real dispute in the evidence centers around the contrary expert opinions given in evidence. The Board adduced the testimony of three expert witnesses, being two pharmacists who did not presently dispense Preludin, and a university pharmacy professor. The two pharmacists believed that a third prescription cannot possibly have a therapeutic purpose. They deferred, however, to the opinion of the university professor that Preludin ceased to have a therapeutic purpose only with the fourth prescription for the same individual. Consequently, in the view of the university professor, Seely's precautions were meaningless in a case where the same individual presented for filling a fourth prescription for the drug—notwithstanding the patient's appearance and the assurances of his physician, who had prescribed the drug, the fourth Preludin prescription *categorically* lacked any therapeutic purpose in any and all cases whatever. Because the undisputed evidence showed that Seely filled

four or more prescriptions for 84 patients, and because the sheer quantity of Preludin tablets prescribed by Seely raised suspicions about his handling of the drug, the professor believed that Seely had been "negligent" and "unprofessional" and his conduct inconsistent with a therapeutic purpose in dispensing Preludin. Professional misconduct was "in the air," so to speak. The Board, we are told, concurred with the professor's opinions.

Seely adduced expert opinion testimony to the contrary. Basically, that testimony was to the effect that Preludin may be taken safely after three months *if* the patient is monitored carefully to assure that he is losing weight, not abusing the drug, and that his health is not adversely affected.

Under the Board's theory, it was free to select its own evidence as more trustworthy or informed, and could reasonably decide Seely's case accordingly. We reject the Board's theory of what substantial-evidence review implies and requires.

■ The Board's theory of substantial-evidence review is contrary to the Supreme Court's instructions in the *Charter Medical* opinion. In its opinion in that case, the Supreme Court directed a framework and course of analysis quite different from those contemplated in the Board's theory. *Charter Medical* directs two inquiries by the reviewing court in a substantial-evidence review: (1) do the findings of underlying fact *stated in the agency order* fairly support the agency's findings of ultimate fact, or conclusions of law, *also stated in the order* as the basis for the agency's decision; and (2) if so, do the findings of underlying fact find reasonable support in the evidence adduced in the agency proceeding? *Charter Medical*, 665 S.W.2d at 452–53. The agency decision is *not* supported by "substantial evidence" if either inquiry is answered negatively. We turn then to apply the *Charter Medical* analysis to the Board's order in the present case.

We hold the Board's order cannot satisfy the first of the two *Charter Medical* inquiries. The Board's four conclusions of law are not fairly supported by its findings of underlying fact. While the latter show that Seely filled four or more prescriptions for 84 individuals, nothing *in the order* constitutes an *agency* determination of fact or law that the fourth and any succeeding prescriptions could not have a therapeutic purpose. Similarly, nothing *in the order* constitutes an *agency* determination of fact or law establishing a maximum percentage of Preludin tablets that might be supplied in any period without contravening the norms and standards of conduct stated in the relevant statutes and rules. Perhaps either of these determinations *might* have been made by the Board, from the opinion evidence given by the pharmacy professor, but the fact remains that the Board *did not* make them in its final order and we are *forbidden* to *presume* the Board *did* make them simply because it determined as it did in its four conclusions of law or in its ultimate decision. *Charter Medical*, 665 S.W.2d at 451; *Morgan Drive Away, Inc. v. Railroad Commission of Texas*, 498 S.W.2d 147, 152 (Tex.1973).

While the foregoing is sufficient to dispose of the Board's contention that we must uphold the agency's decision in the case, it is also sufficient to demonstrate the correctness of the district-court judgment reversing the order.

## NOTICE

■ Contrary to the Board's contention, in another point of error, the district court properly reversed the Board's order on the ground that Seely did not receive adequate notice of the proceeding in which his license was revoked. In his petition in the district court, Seely assailed the agency decision because the notice given him did not supply fair notice "of the nature of the proscribed conduct" upon which the Board intended to revoke his license if that conduct were proved. APTRA § 13(a). Seely contended he was denied due process of law for want of fair notice. APTRA § 19(e)(1).

The notice given Seely merely paraphrased or quoted the statutory provisions and rules upon which the disciplinary proceeding was based, and upon which the

case was eventually decided as discussed above. Texas Pharmacy Act § 26(a)(1), (2), (9), and (13); 22 Tex.Admin.Code § 281.24(a); 21 U.S.C.A. § 841(a)(1); 21 C.F.R. § 1306.06. The Board also listed in its notice each of the 199 instances where Seely filled more than one prescription for a single person. There is, therefore, no question that Seely received notice of the *conduct* upon which the Board contemplated revoking his license. The defect lay in a want of notice concerning the *legal* criteria the Board would apply to that conduct.

As stated previously, the fact that Seely filled multiple prescriptions for 199 individuals, in the period in question, is essentially undisputed. In concluding that Seely *thereby* violated the various provisions of the Texas Pharmacy Act, the Board necessarily applied *some* norm or standard to Seely's conduct in filling those prescriptions. We may assume, *without deciding,* that the Board possessed authority to promulgate official policy as to what that norm or standard should be; that it promulgated a valid policy consistent with the statutory provisions committed to the Board's administration; and that it permissibly promulgated and applied that policy retroactively in the course of adjudicating Seely's case, rather than formulating and promulgating that policy under the rulemaking provisions of APTRA §§ 4–10, to be applied prospectively. *See Southwestern Bell Tel. Co. v. P.U.C.,* 745 S.W.2d 918, 926–27 (Tex.App.1988, writ denied). All these assumptions are necessary, of course, to a valid order revoking Seely's license based upon his past actions in filling the Preludin prescriptions between August 12, 1985 and December 15, 1986. We believe, however, that Seely was unquestionably entitled to notice, before the hearing, of *the legal norms or standard that would be applied to the undisputed factual grounds* upon which the Board contemplated revoking Seely's license.

In APTRA § 13(a)–(c), the Legislature required "reasonable notice" in the initiation of contested cases. The Board's own rules essentially track that statute in the

matter of notice. 22 Tex.Admin.Code §§ 281.28, 281.32 (1986).

■ More than a quotation from the controlling statutes may be required, by way of "notice," under the circumstances of a particular contested case, if the licensee is to receive both "reasonable notice" and "due process of law as guaranteed by the State and Federal Constitutions." *See generally House of Tobacco, Inc. v. Calvert,* 394 S.W.2d 654, 657–658 (Tex.1965). To be meaningful, the *notice* and *hearing,* which due process requires, implies *previous* notice and a hearing *relative to* the issues of fact *and* law that will *control the result* to be reached by the agency. *Morgan v. United States,* 304 U.S. 1, 18–19, 58 S.Ct. 773, 776–777, 82 L.Ed. 1129 (1938); *Madden v. Texas Board of Chiropractic Examiners,* 663 S.W.2d 622, 626–627 (Tex.App. 1983, writ ref'd n.r.e.).

*Madden* is indistinguishable in principle from *Seely's* case. Each was decided by the agency in a fashion that is fundamentally unfair. In *Madden,* the relevant statute required graduation from a "bona fide reputable chiropractic school" before an applicant might take the agency's licensing examination. No statute or rule defined further the expression "bona fide reputable chiropractic school." Madden was given no other notice, *before* his hearing, of what the term might mean in the view of the agency—the only authority empowered to assign particular meaning to it. The agency denied Madden permission to take the examination on the sole ground that his college was not a "bona fide reputable chiropractic school" within the meaning of the statute. In its final order deciding Madden's case, the agency first assigned meaning to the statutory term—it meant a chiropractic college accredited by a "body viewed as reliable by the" agency or an unaccredited college showing "a valid reason why such accreditation cannot be obtained," coupled with other "proof of reputable status." These norms and standards were not fairly implied in the statutory expression "bona fide reputable chiropractic school," but they did control the decision reached by the agency in Madden's

case. Because he was not given advance notice of what those norms and standards would be, we held he had been denied the *meaningful* hearing that due process of law requires. *Madden,* 663 S.W.2d at 626–27.

In Seely's case, the relevant statutory and rule-based provisions informed him that his license might be revoked because his conduct in filling the valid Preludin prescriptions was: "unprofessional"; not in "the usual course of professional practice"; "not consistent with the public health or welfare"; and not "acceptable" conduct "consistent with the public health and welfare." These broad expressions do not reasonably imply the three-prescription limitation or the unspecified percentage limitations upon which, we are told, the Board revoked Seely's license. No statute or rule established those limitations before Seely's hearing and he was given no other advance notice that they would apply to control the Board's decision in his case. Accordingly, we hold he was denied the *meaningful* hearing that due process of law requires.

## THE DISTRICT–COURT JUDGMENT

■ We hold the district court properly reversed the Board's final order on either of the grounds discussed above. We need not, therefore, discuss any other grounds upon which such reversal might have been ordered, as these grounds were alleged in Seely's petition in district court. What we have said above applies equally to the Board's final order revoking the pharmacy license of A Little Walnut Pharmacy, Inc.

We also hold, however, that no grounds appear in the record for the district-court judgment holding the Board's orders "null and void" and enjoining permanently their enforcement. The record indicates, to the contrary, that the Board had undoubted and undisputed jurisdiction of the subject matter and jurisdiction over Seely and the pharmacy. In APTRA § 19(b)(3), the Legislature expressly provided that suits for review under the substantial-evidence rule, such as the present, do "not affect the enforcement of an agency decision." Since

the district court correctly reversed the Board's final order, the proper judgment was one remanding the case to the Board for further proceedings. We hold accordingly. APTRA § 19(e).

We therefore affirm the judgment below insofar as it reverses the Board's final orders. We reverse that judgment insofar as it purports to declare the agency order "null and void" and to enjoin permanently their enforcement. We remand the case to the district court, ordering that it be remanded to the Board for further proceedings.