# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00170-CV

---

**Carl M. Patton, Appellant**

**v.**

**Employees Retirement System of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-06-002635, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Carl M. Patton appeals the district court's order affirming a final order by

the Board of Trustees for the Employees Retirement System of Texas terminating his occupational

disability retirement benefits.[1]  In three issues, Patton urges that the district court erred in affirming

the Board's decision.  Because we conclude the Board acted arbitrarily and capriciously, that it

abused its discretion in terminating Patton's benefits, and that Patton's substantial rights were

prejudiced, we reverse the judgment of the district court with instructions that the cause be remanded

to the Board for further proceedings consistent with this opinion.

---

[1]  We refer to several entities throughout this appeal.  The "Board" refers to the agency's board of trustees, which hears appeals of contested cases.  *See* Tex. Gov't Code Ann. § 815.511 (West 2004).  The "Medical Board" refers to the agency's medical board, which certifies occupational disability retirement claimants as disabled. *See id.* § 814.203 (West 2004). "ERS staff" refers to the agency's representatives at the administrative hearing before the State Office of Administrative Hearings.

## FACTUAL AND PROCEDURAL BACKGROUND

Carl Patton worked for the Lufkin State School in 1990 as a supervisor in the paint department. While at work on August 28, 1990, Patton suffered a back injury. Patton thereafter applied to ERS, was certified disabled, and began receiving occupational disability retirement benefits in 1992. *See* Tex. Gov't Code Ann. §§ 814.201, .203 (West 2004).[2]

As part of an internal audit process, ERS in 2004 requested medical and employment information from Patton. In response, Patton provided information on his medical condition and his employment at a private hospital in Lufkin, including his earnings for the years 2002 through 2004. The hospital employed Patton from 1996 to 2000 as a shuttle bus driver and thereafter as a security guard. Based on the information provided, ERS discontinued Patton's benefits effective April 1, 2005.

In the notification letter to Patton, ERS's executive director quoted the applicable statute and rule and explained the reasoning behind the decision to discontinue Patton's benefits:

> The records ERS has received reflect that as of the date of your disability retirement, your annual salary was $17,628. That salary has been adjusted upward to $21,806 to reflect expected increases in compensation had you remained in your state job. In your position as a security guard with [the hospital], your annual salary was $18,291.15, and $18,555.60 for calender years 2002 and 2004 respectively.
>
> The ERS Medical Board has declined to certify that you continue to be mentally or physically incapacitated for the further performance of duty, as required by the Texas Government Code and rule sections cited above in order for you to qualify for continuation of occupational disability retirement benefits. After reviewing your

---

[2] ERS provides four types of benefits for eligible state employees: service retirement, occupational disability retirement, nonoccupational disability retirement, and death benefits. *See* Tex. Gov't Code Ann. § 814.001 (West 2004).

2

> medical records and evidence concerning your employment by [the hospital], the Medical Board concluded that you are no longer incapacitated for the further performance of duty, that any incapacity you may have is not likely to be permanent and that you should not be retired. For these reasons, I am unable to approve continuation of your occupational disability retirement benefits.

Patton appealed the termination of his benefits to the Board, and a hearing was held before an administrative law judge with the State Office of Administrative Hearings.

The hearing occurred in July 2005. Patton was not represented by counsel. Patton and his two sisters, Delois Patton and Dorothy Patton, were the only witnesses to testify at the hearing. They testified concerning Patton's education, employment, medical condition, and disability. Also, in an attempt to provide evidence that Patton was unable to obtain a state job and that there were no available state jobs that he could perform, Delois Patton testified that she worked at the Lufkin State School and that she had checked job postings three or four times a month for the past three or four years for Patton without success. The Board did not object to this testimony or provide contrary evidence. ERS presented records that included Patton's earning statements for 2002 through 2004, his medical history, affidavits from ERS staff, and the deposition transcript of Edd Terrill, III, Patton's supervisor at the hospital. Terrill stated that Patton worked full time and was a good employee. There was no evidence of particular state jobs that Patton was capable of holding.

The ALJ issued a proposal for decision recommending that ERS reinstate Patton's benefits. ERS staff filed exceptions, and the Board rejected the ALJ's proposal for decision and adopted ERS staff's alternative findings of fact and conclusions of law on May 24, 2006. The Board's findings of fact included:

3

1. Carl Patton appealed the decision of the Executive Director of the Employees Retirement System (ERS) to discontinue his occupational disability retirement benefits.

* * *

4. Mr. Patton worked for the Lufkin State School in Lufkin, Texas, as the supervisor of the paint department. His job classification was Maintenance Mechanic III. His duties required him to lift gallons of paint, sheet rock, and heavy scaffolding.

5. On August 28, 1990, Mr. Patton suffered a back injury when he slipped on the floor while cleaning paint brushes . . . .

6. Effective November 30, 1992, Mr. Patton was approved for occupational disability retirement benefits after ERS found him to be physically unable to continue performing his work and to be capable of performing only sedentary work.

7. In 1996, Mr. Patton began working as a security guard at a hospital in the private sector, Memorial Health System of East Texas, in Lufkin. His duties included patrolling the buildings and grounds, observing video surveillance monitors, and escorting visitors to their vehicles.

8. From 2002 through 2004, Mr. Patton received an annuity of $7,632.00 per year in occupational disability benefits.

9. Mr. Patton's social security wages from the Hospital were $18,291.15 in 2002 and $18,555.60 in 2004.

10. The Executive Director of ERS terminated Mr. Patton's occupational disability retirement benefits as of April 1, 2005, because Mr. Patton's employment information and the ERS Medical Board's certification reflected that he was no longer incapacitated for the further performance of duty.

11. Mr. Patton's final annual state salary was $17,664.

12. Mr. Patton's adjusted final annual state salary is $21,963, which reflects legislative increases in his compensation had Mr. Patton remained in his state job.

4

13. Annual pay received by Mr. Patton that is equal to or greater than 80% of his adjusted final annual state salary ($17,570.40) is comparable to his adjusted final annual state pay of $21,963.

14. In 2002 and 2004, Mr. Patton received pay comparable to that which he was receiving when he retired with occupational retirement benefits.

15. Mr. Patton's physical condition has improved since he retired, but he is unable to perform the work of his former state job.

16. Mr. Patton failed to meet his burden of proof to show that there are no state jobs available for which he is qualified by training, education and experience offering wages comparable to the pay he was receiving when he left the Lufkin State School.

The Board's conclusions of law included:

4. Based upon the above Findings of Fact, Mr. Patton failed to meet his burden of proof to show that he is physically and mentally incapable of holding a position with the State offering pay comparable to that of the state job for which he retired as required by 34 TEX. ADMIN. CODE § 73.17.

5. Mr. Patton failed to meet his burden of proof to show that he is mentally and physically incapacitated from the further performance of duty pursuant to TEX. GOV'T CODE ANN. §§ 814.208 and 814.210.

6. Based on the above Findings of Fact and Conclusions of Law, Mr. Patton's appeal in this matter should be denied.

Patton appealed the Board's order to the district court, which affirmed the decision of the Board. *See* Tex. Gov't Code Ann. § 815.511(f) (West 2004). This appeal followed.

**ANALYSIS**

Patton contends in three issues that the district court erred in affirming the Board's decision to discontinue Patton's occupational disability retirement benefits. Patton contends that

5

(i) the Board based its decision to terminate benefits on incorrect standards and improperly used testimony, (ii) the Board improperly struck testimony and the administrative law judge's findings of fact, and (iii) the Board improperly applied a rule change retroactively. The central issue is the Board's construction and application of an administrative rule. For the reasons that follow, we sustain Patton's issues one and three, rendering it unnecessary to reach the merits of Patton's remaining issue. *See* Tex. R. App. P. 47.1.

### *Standard of Review*

Our review of this appeal is under the substantial evidence rule. *See* Tex. Gov't Code Ann. §§ 815.511(f), 2001.174 (West 2000). "Broadly speaking, the substantial evidence rule is a court review device to keep the courts out of the business of administrating regulatory statutes enacted by the Legislature; but it remains the business of the courts to see that justice is administered to competing parties by governmental agencies." *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 13 (Tex. 1977). When a court is applying the substantial evidence standard of review to an agency decision, the issue for the reviewing court is not whether the agency's decision was correct, but whether the record demonstrates some reasonable basis for the agency's action. *See Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 561 (Tex. App.—Austin 2000, pet. denied). A court shall reverse and remand for further proceedings if substantial rights of the appellant have been prejudiced because the decision is arbitrary or capricious or characterized by abuse of discretion. *See* Tex. Gov't Code Ann. § 2001.174(2)(F); *Reliant Energy, Inc. v. Public Util. Comm'n*, 153 S.W.3d 174, 184 (Tex. App.—Austin 2004, pet. denied).

An agency's interpretation of its own regulations is entitled to deference by the courts as long as it is not clearly erroneous or inconsistent with the rule or statute. *See Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991). If the agency fails to follow the clear, unambiguous language of its own regulations, however, its actions are arbitrary and capricious. *Id*.; *Power Res. Group, Inc. v. Public Util. Comm'n*, 73 S.W.3d 354, 358 (Tex. App.—Austin 2002, pet. denied). Courts construe administrative rules, which have the same force as statutes, in the same manner as statutes. *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976). Statutory construction is a question of law, which we review *de novo*. *Bragg v. Edwards Aquifer Auth*., 71 S.W.3d 729, 734 (Tex. 2002). Unless the rule is ambiguous, we follow the rule's clear language. *See Republicbank Dallas, N.A. v. Interkal, Inc*., 691 S.W.2d 605, 607 (Tex. 1985).

This Court recognizes that an administrative agency is not necessarily subject to the same procedural rules and restrictions as a court of law, but an agency must respect the due process rights of those persons who appear before it in contested cases. *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 539 (Tex. App.—Austin 2002, pet. denied) (citing *Texas State Bd. of Pharmacy v. Seely*, 764 S.W.2d 806, 815 (Tex. App.—Austin 1988, writ denied); *Madden v. Texas Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622, 625-27 (Tex. App.—Austin 1983, writ ref'd n.r.e.)). A person before an agency in a contested case hearing is entitled to meaningful notice, before the hearing, of the legal standards that apply. *See Seely*, 764 S.W.2d at 815; *Madden*, 663 S.W.2d at 625-27.

*"Comparable Pay"*

As part of his first issue, Patton contends the Board based its decision to terminate his benefits on incorrect standards. Specifically, Patton urges that the Board improperly terminated his benefits based on the Board's comparison of 80 percent of his adjusted final annual state salary with his wages from his employment at the hospital. In his third issue, Patton contends that the Board improperly applied a rule change retroactively to terminate his benefits. Both issues challenge the Board's application of its newly adopted threshold standard of "comparable pay" under the relevant rule, Rule 73.17. *See* 34 Tex. Admin. Code § 73.17, 6 Tex. Reg. 3427, 3432 (1981) (Employees Retirement System of Texas).

Rule 73.17 construes section 814.208(d) of the government code, the statute that allows ERS to terminate a retiree's occupational disability retirement benefits. *Id.* Pursuant to statute, ERS is authorized to discontinue benefits if the retiree is "no longer mentally or physically incapacitated for the performance of duty." *See* Tex. Gov't Code Ann. § 814.208(d) (West 2004). The statute does not define "incapacitated for the performance of duty." ERS, however, in Rule 73.17 as it existed in 1992, defined "incapacity from the further performance of duty" to mean "that the member is physically or mentally unable to continue to hold the position occupied or to hold a position with the state offering comparable pay." *See* 34 Tex. Admin. Code § 73.17; 6 Tex. Reg. at 3432.[3] The parties agree that Rule 73.17 as it existed when Patton retired in 1992 is the version

---

[3] In 1992, the text of the rule read:

*Disability Retirement—Eligibility.* Incapacity from the further performance of duty means that the member is physically or mentally unable to continue to hold the position occupied or to hold a position with the state offering comparable pay. The

of the rule that applies to Patton. *See Pantera Energy Co. v. Railroad Comm'n of Texas*, 150 S.W.3d 466, 472-74 (Tex. App.—Austin 2004, no pet.) (substantive amendments to rule generally do not apply retroactively). The parties also agree that Patton's medical condition continues to prevent him from holding the position at the state that he occupied when he retired. The dispute between the parties then is whether Patton is currently able "to hold a position with the state offering comparable pay."

As it existed in 1992, Rule 73.17 did not define "comparable pay." *See* 34 Tex. Admin. Code § 73.17; 6 Tex. Reg. at 3432. The current version of Rule 73.17, however, defines "comparable pay" and no longer contains the limiting reference to "a position with the state." The rule was amended in 2001 by deleting the phrase "with the state" to allow ERS to consider private as well as public sector wages in its "comparable pay" analysis. *See* 34 Tex. Admin. Code § 73.17, 26 Tex. Reg. 5368 (2001), *adopted* 26 Tex. Reg. 6953 (2001).[4] The rule was further amended in

---

education, training, and experience of the employee are to be considered when making this determination.

34 Tex. Admin. Code § 73.17, 6 Tex. Reg. 3427, 3432 (1981) (effective September 21, 1981).

[4] After the 2001 amendment, the text of the rule read:

*Disability Retirement—Eligibility*.

Incapacity from the further performance of duty means that the member has demonstrably sought and been denied workplace accommodation of the disability in accordance with applicable law, and that the member is physically or mentally unable to continue to hold the position occupied and to hold any other position offering comparable pay. The education, training, and experience of the employee are to be considered when making this determination.

34 Tex. Admin. Code § 73.17, 26 Tex. Reg. 5368 (2001), *adopted* 26 Tex. Reg. 6953 (2001) (effective September 13, 2001).

9

May 2006, a few weeks before the Board's decision to terminate Patton's benefits and almost a year after Patton's hearing, to define "comparable pay" to mean "eighty (80) percent or more of the member's final state base pay prior to deductions for taxes or deferred compensation as provided or allowed by state and federal law; and it includes longevity and hazardous duty pay." *See* 34 Tex. Admin. Code § 73.17, 31 Tex. Reg. 1612 (2006), *adopted* 31 Tex. Reg. 3588 (2006).[5] The

---

[5] After the 2006 amendment, the text of the rule reads:

*Disability Retirement—Eligibility*.

(a) Incapacity from the further performance of duty means that the member has demonstrably sought and been denied workplace accommodation of the disability in accordance with applicable law, and that the member is physically or mentally unable to continue to hold the position occupied and to hold any other position offering comparable pay. The education, training, and experience of the employee are to be considered when making this determination. "Comparable pay" means eighty (80) percent or more of the members final state base pay prior to deductions for taxes or deferred compensation as provided or allowed by state and federal law; and it includes longevity and hazardous duty pay. Comparable pay may be adjusted by retirement system staff to account for realized state pay rate changes over time. The term excludes the monetary value of insurance and retirement benefits.

(b) In addition to the periodic medical examinations provided for in Texas Government Code § 814.208(a), the executive director may direct a disability retiree to undergo additional medical examinations and to provide additional information satisfactory to the retirement system relevant to determining whether or not the retiree remains incapacitated for the further performance of duty. Absent a showing of good cause, a disability retiree who fails to respond to the request in a timely manner may have his or her disability retirement benefits and associated health insurance benefits suspended until the retiree has fully complied with the request. If the retiree fails to comply with the request for one year from the date the information was first requested by the retirement system, then all disability retirement benefits shall be terminated.

34 Tex. Admin. Code § 73.17, 31 Tex. Reg. 1612 (2006), *adopted* 31 Tex. Reg. 3588 (2006) (effective May 3, 2006).

current rule also allows ERS to adjust comparable pay "to account for realized state pay rate changes over time." *Id.*

ERS contends that the Board applied Rule 73.17 as it existed in 1992 to Patton, utilizing an "internal interpretive guideline" to construe "comparable pay" and that the 2006 amendments to Rule 73.17 subsequently incorporated the existing guideline. The Board's guideline is identical to the 2006 amendment to the rule. ERS argues that this Court should defer to the Board's interpretation because the guideline is consistent with the plain and ordinary meaning of comparable, "similar to but not exactly the same as the thing being compared." *See Broadhurst v. Employees Ret. S*ys., 83 S.W.3d 320, 323 (Tex. App.—Austin 2002, pet. denied) (agency interpretation entitled to deference). ERS also contends that because "comparable pay" is "arguably ambiguous," the Board properly relied on extrinsic aids at the hearing, including a survey performed by ERS staff that reviewed other public retirement systems around the country to construe "comparable" and that this Court should defer to the Board's interpretation. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (extrinsic aids may be resorted to when statute ambiguous). By affidavit, the Director of Internal Auditing for ERS provided the results of the survey and stated, based on the survey's results, "ERS staff has construed [comparable pay] as used in Rule 73.17 as referring to pay that is equal to or in excess of 80 percent of a disability retiree's [adjusted final annual state salary]." ERS asserts that the plain meaning of comparable pay and the survey could have supported a "finding of comparability for earnings as low as 50 percent." ERS characterizes the 80 percent threshold standard as reasonable and applied in a manner that supposedly eased Patton's burden to show that he remained incapacitated.

11

Although ERS assails Patton and his sister's attempts to disprove the existence of available state jobs with comparable pay, they had no meaningful notice regarding the standard against which their evidence would be measured. Due process and fundamental principals of fairness dictate that the Board should have provided meaningful notice to Patton before applying its 80 percent threshold standard to his post disability earnings to terminate his benefits. *See Seely*, 764 S.W.2d at 815; *Madden*, 663 S.W.2d at 626-27; *see also* Tex. Gov't Code Ann. §§ 2001.004, .005 (West 2000). ERS urges that it provided notice to Patton at the hearing and in the executive director's letter in 2005 advising Patton that his benefits were terminated. Being advised of the survey results and the Board's construction of "comparable pay" to include its 80 percent threshold standard at the hearing was not sufficient notice to satisfy due process concerns. *See Seely*, 764 S.W.2d at 815; *Madden*, 663 S.W.2d at 626-27. The 2005 letter advising Patton that his benefits had been terminated similarly was not sufficient. ERS contends that the letter "implicated the 80 percent guideline" and Patton received "constructive notice" that wages below his adjusted final annual state salary were comparable. The letter, however, does not address ERS's 80 percent threshold standard that supported terminating benefits or the Board's construction of "comparable pay."

Patton testified at the hearing that before he accepted employment at the private hospital job, he contacted ERS because he did not want to do anything to "jeopardize" his disability retirement benefits. He testified that he spoke with Janice Watt, a disability benefits counselor with ERS, and that she told him that he could accept other employment as long as it was not similar to the maintenance work that he was performing when he was injured. Dorothy Patton also testified

12

that it was her understanding from conversations with ERS staff that "[Patton] could work as long as he was not performing the same duties." Patton's testimony is consistent with the only evidence the Board provided on this issue—Watt's affidavit. Watt stated in her affidavit that she did not recall speaking with Patton but that part of her duties included counseling disability retirees about the ongoing re-evaluation of their disability. She stated that it was her "consistent practice to advise disability retirees that working at a job that was substantially similar to their state job could cause them to lose their disability retirement benefits." She explained the reason for the warning, that "performing such substantially similar duties indicates an ability to perform the duties of the retiree's prior state job."[6] Watt also stated that it was her "consistent practice to advise disability retirees that they could work in the private sector at a different job offering a lower rate of pay (e.g., working part-time or in a more sedentary position that offered less pay than their state job)."

Patton's employment at the hospital at a rate of pay lower than his adjusted final annual state salary was consistent with Watt's stated advice and parameters to retirees. Prior to his hearing, Patton did not have meaningful notice that earning 80 percent of his adjusted final annual state salary could cause his benefits to be terminated. *See Seely*, 764 S.W.2d at 815; *Madden*, 663 S.W.2d at 626-27.

ERS argues that, in any event, the Board's application of the 80 percent threshold to Patton's post-disability wages at the hearing was nondispositive and not harmful to Patton. We disagree. The Board specifically found in findings of fact 11, 12, and 13 that Patton's final salary

---

[6] ERS does not contend that Patton's job at the hospital has "substantially similar duties" to his prior state job.

13

in his state position was $17,664, his adjusted final annual state salary was $21,963, and 80 percent of his adjusted final salary in his state position was $17,570.40. The Board then relied on its comparison of 80 percent of his adjusted final annual state salary and his private sector wages in 2002 and 2004 to reach its conclusions of law 4, 5, and 6 that Patton was no longer incapacitated and that his appeal should be denied. As ERS states in its brief to this Court, "As [Patton] had received annual pay from his job at the Hospital that was greater than 80 percent of his adjusted final state salary, his pay for those years was found to be comparable." Patton's annual wages from the hospital were at all times less than his adjusted final annual state salary, so it is only when the 80 percent threshold is applied to Patton's post-disability wages that his wages for 2002 and 2004 fall within ERS's construction of "comparable pay" to support the Board's termination of benefits.[7]

We conclude that the Board abused its discretion and acted arbitrarily and capriciously in applying the 80 percent threshold standard to Patton and that Patton's substantial rights were prejudiced. *See* Tex. Gov't Code Ann. § 2001.174(2)(F). We also address Patton's subissue under his first issue, the Board's use of his private sector wages in applying the 80 percent threshold standard.

***Private Sector Pay***

Even if the Board properly applied its 80 percent threshold standard to Patton, Patton contends that the Board failed to follow the plain language of Rule 73.17 as it existed in 1992. *See*

---

[7] Patton's wages were approximately $750 above the 80 percent threshold in 2002, below the threshold in 2003, and approximately $1,000 above the threshold in 2004. Another issue at the hearing was which measure of wages was the correct measure for determining comparable pay.

34 Tex. Admin. Code § 72.17, 6 Tex. Reg. at 3432.[8] We agree. By using Patton's private sector wages to reach its determination that Patton's wages in 2002 and 2004 were "comparable," the Board did not follow the plain language of its own rule expressly limiting the analysis to state positions. *See Mid-Century Ins. Co. v. Ademaj*, No. 05-0016, 2007 Tex. LEXIS 1031, at *13 (Tex. Nov. 30, 2007); *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006). "It is an elementary rule of construction that, when possible to do so, effect must be given to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous." *City of Marshall*, 206 S.W.3d at 105 (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003)). "Comparable pay" in the rule does not stand alone; it is limited to a "position with the state offering comparable pay." 34 Tex. Admin. Code § 73.17, 6 Tex. Reg. at 3432. By the plain language of Rule 73.17, Patton's private sector pay was not the applicable measure, and ERS's application of its rule rendered the stated parameter of a "position with the state" without effect. *See id*.

ERS urges that the Board properly considered Patton's private sector job because Rule 73.17 directs the Board to consider Patton's education, training, and experience. *See id.* ERS contends that the Board relied on Patton's private sector employment as proof of his "fitness and ability to earn comparable pay at another state position." In its briefing on appeal, ERS states, "[Patton]'s ability to work at the Hospital as a driver and security guard and to earn 80 percent of his adjusted final state salary provides substantial evidence of his capability to earn comparable pay in a state job." This evidence falls short of supporting such an inference, however, about proof of identifiable state positions to which his skills and abilities were transferable and the pay he would

---

[8] As previously discussed, the analysis under the current rule is no longer limited to state jobs. *See* 34 Tex. Admin. Code § 73.17, 26 Tex. Reg. 6953 (2001).

15

earn. While we may defer to agency expertise in some situations, an agency's expertise is not a substitute for evidence. *See Railroad Comm'n v. Lone Star Gas Co.*, 618 S.W.2d 121, 124-25 (Tex. App.—Austin 1981, no writ). Our review of the record reveals no testimony or other evidence that could have enabled the Board to determine that state jobs with comparable pay were considered in assessing Patton's "incapacity for the further performance of duty." *See Park Haven, Inc. v. Texas Dep't of Human Servs.*, 80 S.W.3d 211, 215 (Tex. App.—Austin 2002, no pet.).

We conclude the Board abused its discretion, acted arbitrarily and capriciously, and that Patton's substantial rights were prejudiced when the Board compared and relied on Patton's private sector wages to terminate his benefits. *See* Tex. Gov't Code Ann. § 2001.174(2)(F).

## CONCLUSION

Because we conclude the Board acted arbitrarily and capriciously, that it abused its discretion in terminating Patton's occupational disability retirement benefits, and that Patton's substantial rights were prejudiced, we reverse the district court judgment upholding the Board's order and remand to the district court with instructions that the cause be remanded to the Board for further proceedings consistent with this opinion.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Reversed and Remanded

Filed:  December 19, 2007

16