

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00078-CV

_____

ANDRA BARTON, Appellant

V.

STATE BOARD FOR EDUCATOR CERTIFICATION, Appellee

On Appeal from the 261st Judicial District Court
Travis County, Texas
Trial Court No. D-1-GN-10-002986

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

Andra Barton was the principal at Old Union Elementary School in Carroll Independent School District.[1] After a co-worker accused Barton of various violations relative to changes in individual students' educational programs, a school district's law firm found the allegations true, Barton resigned, and disciplinary action was instituted on multiple grounds, including an allegation that Barton made changes in educational programs without notifying or consulting students' parents. Subsequently, an Administrative Law Judge (ALJ) found almost entirely for Barton, but found that Barton did not give *written* notice of program changes to affected parents; the ALJ recommended a relatively light, noninscribed reprimand.[2] The trial court affirmed the ALJ's ruling, and Barton appeals that decision. Because a failure to give written notice[3] was never pled against Barton so she could defend against that particular allegation, we vacate the

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]A "non-inscribed reprimand" is a "formal, unpublished censure that does not appear on the face of the educator's virtual certificate" and, reportedly, is not disclosed unless someone asks the right question. *See* 19 TEX. ADMIN. CODE § 249.3 (West, Westlaw through 2012).

[3]The written-notice provision in question is contained in the federal regulations:

> (a)     Notice. Written notice that meets the requirements of paragraph (b) of this section must be given to the parents of a child with a disability a reasonable time before the public agency--
> (1)     Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child; or
> (2)     Refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child.

34 C.F.R. § 300.503 (LEXIS through 2012). Barton argues Section 300.503 does not apply to agreed modifications. Alternatively, Barton argues she complied with Section 300.503 by sending the parents written notice after the oral agreement was reached.

2

remaining sanction against Barton. Before we get into the legal analysis, however, recounting some of the extensive background would be helpful.

Our background narrative begins when Barton's school lost its "exemplary" rating because of insufficient scores of its students on the standard test called Texas Assessment of Knowledge and Skills (TAKS). In response, Barton conducted a series of staff meetings, early in 2008, focusing on how to improve those scores, particularly among the school's special education students. To accomplish that result, Barton and staff developed a plan to improve the test results among the special education students, a plan which met with almost universal[4] approval of affected parents of special-education students at Old Union School.

Special education is governed by the Individuals with Disabilities Education Act (IDEA). *See* 20 U.S.C.A. §§ 1400–1482 (LEXIS through 2012). In addition, IDEA is supplemented with state regulations. *See* 19 TEX. ADMIN. CODE Ch. 89 (West, Westlaw through 2012). IDEA requires children with disabilities to be provided with education that conforms to each student's individualized education program (IEP). 20 U.S.C.A. § 1414.

The statutory and regulatory scheme sets out a process by which IEPs can be developed and changed by the ARD Committee, which includes the affected child's parents. 20 U.S.C.A. § 1414(d)(B); 34 C.F.R. § 300.321(a) (LEXIS through 2010); TEX. EDUC. CODE ANN. § 29.005(a) (West Supp. 2012); 19 TEX. ADMIN. CODE § 89.1050(c). Traditionally, any IEP

---

[4]Only one child's parents refused to consent to the improvement plan. Those parents were given written notice, and the required hearing by a body called the Admission, Review, and Dismissal (ARD) Committee was held to consider the plan for that student. The procedure Barton used regarding this child and these parents is not at issue here.

modifications were made by an entire ARD Committee.[5]  In 2006, the United States Department of Education finalized regulations interpreting IDEA to permit the modification of IEPs by agreement, in lieu of a formal ARD Committee meeting.  *See* 34 C.F.R. § 300.324(a)(4), (a)(6) (LEXIS through 2010).

In this case, once the staff meetings produced a proposed course of action, Barton instructed her staff to contact the affected parents and ask if they agreed to modify their child's IEP as recommended at the meetings.  Only one child's parents refused to consent to the changes, and a normal ARD proceeding was held for that child.[6]  None of the parents have complained about the changes.

In the aftermath of the plan's implementation, a co-worker's complaints[7] directed at Barton triggered the proceedings,[8] resulting in the noninscribed reprimand made the subject of this appeal.

---

[5]In fact, the ALJ found that the District's policy "seem[ed] to contemplate that decisions about accommodations will be made by ARD committees . . . ."

[6]It is uncontested that this child's parents were provided with written notice as required by law.  *See* 34 C.F.R. 300.503.

[7]An assistant principal, Tina Homan, alleged Barton made these amendments without parental involvement and without an analysis of the effect the changes would have on the child's learning and future education progress.

[8]The District hired a law firm, Henslee-Schwartz, to investigate the co-worker's allegations and placed Barton on administrative leave.  The Henslee-Schwartz report concluded that the allegations leveled at Barton were correct. After Henslee-Schwartz issued its opinion, Barton resigned.

Before an ALJ, disciplinary action was subsequently sought against Barton, alleging that Barton coerced teachers and staff of Old Union School to make changes to a number of special education students' IEPs; that changes were made using improper procedures, without consulting the students' parents, and without a backup resource being provided; that Barton ignored notice that changes were illegal; that Barton coerced her staff to violate the law; that Barton violated student confidentiality; that Barton knowingly adversely affected the students' education; that Barton deliberately or knowingly misrepresented facts regarding a student; and that Barton granted advantage to a student on the basis of a disability.

Among Barton's issues on appeal,[9] she argues that the State Board for Educator Certification (the Board)[10] failed to plead or try lack of written notice. The Board responds that the issue was pled because it alleged lack of notice and alleged violation of the regulation requiring written notice, 34 C.F.R. § 300.503. We conclude that such pleading is insufficient to plead lack of written notice.

We need not give deference to the ALJ's ruling that the Board's pleading sufficiently raises lack of written notice. Although the substantial-evidence standard of review applies to fact issues, "on questions of law, neither the trial court nor the administrative law judge is entitled to deference on appeal." *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam) (substantial evidence review of license revocation). Interpretation of pleadings is a question of law.[11] *Plambeck v. Cisco Indep. Sch. Dist.*, 363 S.W.2d 878, 880 (Tex.

The ALJ issued a 152-page proposal for decision, disagreeing with most of the conclusions of the Henslee-Schwartz report and finding that most of Barton's substantive decisions were reasonable and appropriate and that there was no evidence of coercion. The ALJ concluded that Barton's procedure, while contrary to the District's policy, complied with the law, except that written notice was not provided in advance of obtaining the parental consent to the agreed modifications. The ALJ concluded that written notice was required "before obtaining the parents' consent." Barton sought judicial review, and the district court affirmed. Barton appeals the district court's decision.

[9]Barton urges four appellate issues: that advance written notice was not required, that the requirement of written notice was orally waived when the parents agreed to the modifications, that the Board failed to adequately plead lack of written notice, and that Barton did not act unethically. We conclude that the Board failed to plead the lack of written notice. Because this conclusion is dispositive, it is not necessary for us to address Barton's remaining issues.

[10]The Texas Education Agency was also a party to this proceeding, but has been dismissed. Throughout this opinion, we refer to Barton's adverse party, the State Board for Educator Certification, as the Board.

[11]Here, the interpretation question is whether the Board's pleading was sufficient to afford due process to Barton by adequately notifying her as to any allegation by the Board that she had failed to give adequate notice because it was not in writing. Whether an agency has violated due process is also a question of law. *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 771 (Tex. App.—Austin 2005, no pet.). So, no matter how this question is approached, the ALJ's ruling that the pleading was sufficient is not entitled to deference by this Court.

Civ. App.—Eastland 1963, no writ); *Bearden v. Tex. Co.*, 41 S.W.2d 447, 461 (Tex. Civ. App.—Fort Worth 1931), *aff'd*, 60 S.W.2d 1031 (Tex. Comm'n App. 1933, judgm't adopted).

The Board's pleadings were extensive and detailed. Its Second Amended Petition is nine pages long, contains thirty-six paragraphs of factual allegations under the heading of "Matters Asserted," and cites seven statutes and fifteen regulations.[12] The Petition alleges violations of one statute and violations of ten different regulations. The Board directs our attention to paragraphs 9 and 27 of the Second Amended Petition. Paragraphs 8, 9, and 27 of that Petition provide as follows:

8.     [Changes to the affected students' IEPs] were made without the benefit of the ARD team, without the scheduling of an ARD meeting, **without the benefit of parent involvement**, and without an analysis as to the impact this change would have on the students' learning and future educational progress.

9.     Respondent and her staff altered the students' IEPs without regard to following proper procedure by adding accommodations and making modifications to certain students' IEPs. The changes were made without following proper procedures and **without first notifying the parents and the ARD teams**.

. . . .

27.     Specifically by her actions, Respondent has violated IDEA provisions, including but not limited to 34 C.F.R. 300.322(b); 34 C.F.R. 300.503; 24 C.F.R. 300.321(a) and (e); 34 C.F.R. 300.322; 34 C.F.R. 300.01(b); 34 C.F.R. 300.324; 34 C.F.R. 300.320(a) (6); 34 C.F.R. 300.320(a) (6); 34 C.F.R. 300.123; and 34 C.F.R. 300.623. Respondent also violated the related Texas provisions incorporating IDEA, including but not limited to the following additional provisions: 19 TEX. ADMIN. CODE 89.1015; 19 TEX. ADMIN. CODE 89.1045; 19 TEX. ADMIN. CODE 89.1055(b); and TEX. EDUC. CODE 39.023(b).

---

[12]In addition, the petition cites IDEA in general, sections of the Texas Administrative Code collectively, and sections of the Texas Education Code collectively.

(Emphasis added.) Although paragraphs 8 and 9 allege the changes were made without notifying or involving the parents, these paragraphs make no reference to *written* notice. While the Board clearly pled a violation of Section 300.503, it did not plead lack of written notice—rather, it pled that Barton violated Section 300.503 specifically by not notifying or involving the parents.[13] The question before this Court is whether merely alleging a violation of a regulation is sufficient to plead all possible ways to violate that regulation when one or more specific methods are explicitly alleged and the operative method is omitted.[14]

The Board accurately argues that the Texas Administrative Procedure Act "does not require that every detail be spelled out in the pleading." Section 2001.052 of the Texas Administrative Procedure Act provides as follows:

a) Notice of a hearing in a contested case must include:

(1) a statement of the time, place, and nature of the hearing;
(2) a statement of the legal authority and jurisdiction under which the hearing is to be held;
(3) a reference to the particular sections of the statutes and rules involved; and
(4) a short, plain statement of the matters asserted.

---

[13]One might ask whether the Board's allegation that Barton did not notify the affected parents is tantamount to an allegation that she failed to give them *written* notice, which might be true if *oral* notice can never be effective in notifying parents. This notion, not developed either at trial or on appeal, does not give us much concern. Although Section 300.503 requires written notice under the circumstances it addresses, Section 300.324 seems to allow educational programs to be changed by a parental agreement, such as occurred here, without formal written notice of a proposal to make a change. *See* 34 C.F.R. §§ 300.324, 300.503.

[14]The district court concluded, "The fact that the other allegations drew the most attention and may have been considered more serious by both parties, and that Ms. Barton may not have understood all the bases included, is not pertinent to whether [the Board's] pleadings were sufficient." We review de novo this conclusion and disagree with the district court for two reasons: (1) written notice was not a minor allegation—it was never alleged; and (2) whether the pleadings would put a reasonable person on notice of all allegations is pertinent.

7

TEX. GOV'T CODE ANN. § 2001.052(a) (West 2008). The Board cites *RRZ, Inc. v. Texas Alcoholic Beverage Commission*, No. 04-00-00113-CV, 2001 Tex. App. LEXIS 3698 (Tex. App.—San Antonio June 6, 2001, no pet.) (not designated for publication), for the proposition that "[Section] 2001.052 does not require that every detail be spelled out in the pleading."

While administrative cases are not subject to the fair notice standards applicable to civil cases generally,[15] the Board's argument overlooks the requirement that minimum standards of due process must still be met. "Pleadings in administrative proceedings are not held to the technical standards required in courts of law." *Id.* at *9. The San Antonio court, however, later states, "To be meaningful, notice must provide a respondent with the facts and law which will control the result in the case." *Id*. at *11 (citing *Tex. State Bd. of Pharmacy v. Seely*, 764 S.W.2d 806, 814 (Tex. App.—Austin 1988, writ denied)). In *Seely*, the Austin Court of Appeals noted:

> More than a quotation from the controlling statutes may be required, by way of "notice," under the circumstances of a particular contested case, if the licensee is to receive both "reasonable notice" and "due process of law as guaranteed by the State and Federal Constitutions." *See generally House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654, 657–658 (Tex. 1965). To be meaningful, the notice and hearing, which due process requires, implies previous notice and a hearing relative to the issues of fact and law that will control the result to be reached by the agency. *Morgan v. United States*, 304 U.S. 1, 18–19, 58 S.Ct. 773, 58 S.Ct. 999, 82 L.Ed. 1129 (1938); *Madden v. Texas Board of Chiropractic Examiners*, 663 S.W.2d 622, 626–627 (Tex. App. 1983, writ ref'd n.r.e.).

*Seely*, 764 S.W.2d at 814.

---

[15]In civil trials, "Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004); *see also* TEX. R. CIV. P. 47(a).

Procedural due process requires that state procedures must provide proper procedural safeguards before a claimant's property or liberty interest[16] is destroyed. *See Mathews*, 424 U.S. at 333; *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 854 (Tex. App.—Texarkana 2006, no pet.). At a minimum, due process requires a person who may be deprived of a liberty or property interest to be provided notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews*, 424 U.S. at 333; *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).

There is authority that a general allegation of improper procedures and an allegation of the statute violated can be sufficient pleading. One of our sister courts of appeals has held the allegation that an alcohol license holder failed to stop breach of the peace was sufficient despite not alleging the "person who should have been supervised or in what manner the person should have been supervised." *Tex. Alcoholic Beverage Comm'n v. Mini, Inc.*, 832 S.W.2d 147, 151 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *see Garza v. Tex. Alcoholic Beverage Comm'n*, 138 S.W.3d 609, 619 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Although the Board made several general allegations of improper procedures used by Barton, not all of its allegations were general. This case is distinguishable from *Mini, Inc.* because, here, the Board

---

[16]Both substantive and procedural due process require a protected liberty or property interest to be destroyed by state action. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *Mathews v. Elridge*, 424 U.S. 319, 332 (1976). The United States Supreme Court and the Austin Court of Appeals have recognized a professional license as a protected property interest. *See In re Ruffalo*, 390 U.S. 544, 547 (1968) (recognizing *sub silencio* a property interest in law license); *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 440–41 (Tex. App.—Austin 2011, pet. filed) (explicitly recognizing property interest); *cf. Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) (suggesting in dicta that due process applies when "'good name, reputation, honor, or integrity' is at stake").

9

made a specific allegation of how the statute was violated, an allegation that specifically left out any allegation of lack of written notice.

The fact that the Board alleged Barton failed to notify or involve the parents is important.[17] "Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *Am. Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932)); *see Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (assessing punitive damages in favor of nonparty deprived tobacco companies of presenting defenses particular to that person). Reading in this petition the allegation of a specific method of violating Section 300.503, a reasonable person would have only concluded that the Board was alleging a total lack of notice or parental involvement. A reasonable person would not be put on notice that notice was alleged to be inadequate because it was not written. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice

---

[17]The Board also argues Barton failed to file an application under Section 2001.052(b) of the Texas Government Code requesting more specificity regarding the allegations against her and, therefore, waived any deficiency. Section 2001.052(b) provides:

> If a state agency or other party is unable to state matters in detail at the time notice under this section is served, an initial notice may be limited to a statement of the issues involved. On timely written application, a more definite and detailed statement shall be furnished not less than three days before the date set for the hearing.

TEX. GOV'T CODE ANN. § 2001.052(b) (West 2008). This case was litigated for over a year, the pleadings were nine pages long and contained over thirty-six different paragraphs of allegations. There is no indication the Board sought to invoke the special provisions of subsection (b) allowing temporary summary pleading. Subsection (b) provides an accelerated procedure when immediate action is required. The proceedings in this case were initiated in February 2009, trial occurred October 5–9 and October 12, 2009, and the ALJ issued the final order June 18, 2010. The administrative record consists of nineteen volumes. Finally, the Board filed a nine-page Second Amended Petition containing thirty-six paragraphs of allegations and all the elements required by subsection (a). It is apparent that this contested case was not conducted under the abbreviated procedure contemplated by subsection (b), but rather the Board was proceeding under the normal procedure of subsection (a). Therefore, there was no obligation to file a "written application" under subsection (b). Further, we are unwilling to conclude Barton waived any complaint by failing to request greater specificity of a petition that was already quite specific.

10

reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *see Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (default judgment violated due process when no notice was provided regardless of lack of meritorious defense).

At trial, the Board's theory of the case was that Barton made changes unilaterally, not by agreement. During its opening argument, the Board argued that formal proceedings were required before IEPs were amended, the changes were unilaterally made at meetings with incomplete ARD committees, and the parents were informed only after the changes had been made. Barton successfully argued that IEPs could be amended by agreement, that the parents were orally notified of the proposed changes, and that the parents agreed to the amendments.

A party cannot adequately present a defense if that party is not aware of the allegations against which he or she is defending. The central meaning of procedural due process is clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1864)). This includes notice of the factual basis of the State's allegations. *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).

It is not necessary for us to decide what pleading notice would be required in all license revocation cases.[18] It is necessary for us to decide only what notice was required to be provided

---

[18]"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961). In determining what process is required, we use a flexible standard that depends on the practical requirements of the circumstances.

to Barton. Even when due process does not require a formal hearing,[19] due process demands notice and an opportunity to present a defense. *Goss v. Lopez*, 419 U.S. 565, 581 (1975) (school not required to grant hearing to student facing temporary suspension, but student must be given "notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story"). Because the violation at issue here was not an issue at trial, Barton has not had an opportunity to present her side of the story on that issue.

The record also contains ample support for a conclusion that Barton was surprised and prejudiced.[20] We have not been directed to anywhere in the record demonstrating that Barton was aware that an issue was a failure to provide *written* notice—as opposed to *any* notice or parental involvement. Our own review of the approximately three-day trial discovered written notice being discussed only in three locations—none of which concerned the notice required for agreed modifications to IEPs. As Barton argued to the ALJ, the district court, and this Court, the issue of whether written notice was required to amend the IEP by agreement was not discussed at

*Mathews*, 424 U.S. at 334; *Than*, 901 S.W.2d at 930. "This flexible standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Than*, 901 S.W.2d at 930 (citing *Mathews*, 424 U.S. at 335).

[19]The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). *But see Hudson v. Palmer*, 468 U.S. 517, 521 (1984) (post-deprivation procedures sufficient for inmate's deprival of property because the state could not foresee intentional misconduct of officer); *Parratt v. Taylor*, 451 U.S. 527 (1981) (post-deprivation hearing sufficient for inmate's claim for loss of property); *Harrell v. State*, 286 S.W.3d 315, 316 (Tex. 2009) (finding due process satisfied by post-deprivation notice in inmate trust fund garnishments).

[20]Our analysis is not intended to suggest that a due process deprivation requires that surprise and prejudice be shown.

trial. It is impossible to present evidence in support of a defense if one does not know what is being alleged. While Barton may not have been able to demonstrate that written notice was provided, that does not end the inquiry. While the record as it stands does not contain strong evidence of intentional relinquishment by the parents,[21] if Barton had reasonable notice that failure to give written notice was in dispute, she may have been able to present evidence on the issue of waiver. Due process demanded that Barton be notified of the need to, and be afforded the opportunity to, present such evidence.

Given the detailed nature of the pleadings and the extensive litigation, due process demanded more notice than merely citing the statute violated. The Board alleged Barton failed to notify or involve the parents; an allegation refuted by evidence showing that the parents were provided with oral notice. The Board now argues the evidence of oral notice can be used to support a finding of failure to provide written notice. It was fundamentally unfair to plead and try the total failure to notify or involve the parents, which was successfully refuted, and then use Barton's evidence of oral notice to help prove lack of written notice, which had not been alleged. While the Board may not have been required to allege how Section 300.503 was violated, once the Board alleged how Section 300.503 was violated, it was bound by that allegation. Under the

---

[21]The Texas Supreme Court has defined waiver as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *Dep't of Protective & Regulatory Serv. v. Schutz*, 101 S.W.3d 512, 516 (Tex. App.—Houston [1st Dist.] 2002, no pet.). This Court has held the elements of waiver include: "(1) an existing right, benefit, or advantage; (2) a knowledge, actual or constructive, of its existence; and (3) an actual intention to relinquish it (which can be inferred from conduct)." *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied).

13

facts of this case, it was fundamentally unfair to sanction Barton based on an unpled method of violating Section 300.503.

Although administrative proceedings are not governed by the fair notice pleading standard applicable to civil cases, pleadings in administrative proceedings must comply with the minimum standards of procedural due process. The minimum standards of due process demanded, once the Board made a specific allegation of how Section 300.503 was violated, for Barton to be afforded notice of any different specific allegation of how Section 300.503 was violated. Under the facts of this case, the Board's pleadings were insufficient. Barton cannot be sanctioned for a violation that was neither pled nor tried. Procedural due process demands the sanction be vacated.

We reverse the decision of the district court and vacate the Board's sanction of a noninscribed reprimand issued June 18, 2010.

Josh R. Morriss, III
Chief Justice

Date Submitted: August 8, 2012
Date Decided: September 24, 2012

14